ORLANDO L. NEGRÓN RIVERA y MARÍA DE LOS A. BONILLA, peticionarios, *Ex parte.*

*Número:* CE-86-702 *Resuelto:* 9 de diciembre de 1987

64

*Beatriz Vázquez de Acarón*, abogada de la peticionaria; *Manuel D. Herrero*, de *Herrero, Herrero & Castro*, abogado del recurrido.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

En *Figueroa Ferrer* v. *E.L.A.*, 107 D.P.R. 250 (1978), reconocimos, como una vertiente del derecho a la intimidad consagrado en el Art. II, Sec. 8 de la Constitución del Estado Libre Asociado de Puerto Rico, el consentimiento mutuo como causal de divorcio. En *Torres, Ex parte*, 118 D.P.R. 469 (1987), nos expresamos sobre una estipulación de patria potestad y custodia compartida en un caso de divorcio por dicha causal. El actual caso también emana de una estipulación

en un caso de divorcio por la causal de consentimiento mutuo; en esta ocasión se trata de la pensión alimenticia de unos hijos menores. Plantea la necesidad de esclarecer cuál ha de ser la función del tribunal, tanto al aprobar la estipulación original como al intervenir en procedimientos relacionados con solicitudes sobre rebajas de pensiones alimenticias.

María de los Ángeles Bonilla y Orlando L. Negrón Rivera presentaron, el 21 de junio de 1985,(1) en el Tribunal Superior, Sala de Bayamón, una petición de divorcio por consentimiento mutuo. Acompañaron con la petición una serie de estipulaciones referentes a la custodia, patria potestad, división de bienes gananciales, relaciones paterno-filiales y pensión alimenticia. La pensión estipulada fue de mil trescientos dólares mensuales ($1,300), mil de pensión para los tres hijos menores, habidos en el matrimonio, de cuatro (4), un (1) año y tres (3) meses respectivamente, y trescientos para la esposa. Además, como parte de las estipulaciones el señor Negrón Rivera se comprometió, entre otras cosas, a: pagar gastos de medicina para los menores y la madre; proveer plan médico para los menores; pagar las deudas del último alumbramiento de la peticionaria; proveer a los hijos la ropa y zapatos escolares; pagar los gastos procedentes de los estudios de los hijos durante todas sus etapas de estudio; mantener al día pólizas de seguros para los hijos, y pagar los gastos resultantes de unas reparaciones a hacerse en la vivienda que ocupan los tres menores y la peticionaria.(2)

---

(1) Los esposos Bonilla-Negrón estuvieron representados en el procedimiento por la misma abogada.

(2) La propiedad era ganancial. Como parte de las mismas estipulaciones el señor Negrón Rivera cedió a su ex esposa su participación en ella. Los gastos que se comprometió a pagar fueron los siguientes: poner rejas en el cuarto de lavar, arreglar la cerradura de la puerta del frente, instalar cortinas plegadizas (*venetian blinds*), puertas de cristal y ventanas, corregir filtraciones en el techo y comprar un juego de cuarto para uno de los hijos.

La sentencia de divorcio se dictó el 28 de junio de 1985, haciéndose formar parte de la misma la petición de divorcio y la estipulación jurada.

El 2 de agosto de 1985 Negrón Rivera solicitó rebaja de la pensión alimenticia que había estipulado.(3) El 10 de octubre de 1985 el tribunal redujo la pensión a mil dólares ($1,000) mensuales más un seguro médico por un año.

El 26 de noviembre, al amparo de la Regla 49.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, la peticionaria solicitó el relevo de la orden para rebajar la pensión alimenticia. Luego de una vista evidenciaria, el tribunal hizo determinaciones de hechos y denegó la moción. La peticionaria entonces solicitó enmiendas a las determinaciones de hechos. El 29 de septiembre de 1986 el tribunal dictó una resolución en la que ratifica su decisión, pero incluye algunas de las enmiendas solicitadas.(4) De esta resolución es que la peticionaria recurre ante nos mediante recurso de *certiorari*. Acordamos revisar.

I

*Los hechos y la apreciación de la prueba*

Los hechos del caso ante nos son ilustrativos de los problemas que surgen en los casos de divorcio por la causal de consentimiento mutuo. Demuestran una vez más la urgente necesidad que existe de aprobar guías y reglamentación uniforme en esta crucial área del derecho de familia y de que haya una mayor, efectiva y adecuada intervención por parte de los tribunales y de los abogados de las partes en el pro-

---

(3) En esta ocasión las partes estuvieron representadas por distintos abogados.

(4) En las negociaciones sobre la rebaja de pensión alimenticia no estuvieron presentes las partes, sólo sus abogados.

ceso.(5) Reflejan, además, la falta de asesoramiento responsable a las partes por sus abogados.

Pasemos ahora a analizar la cronología procesal que desemboca en la resolución que hoy es objeto de nuestra consideración. El 21 de junio de 1985, la peticionaria señora Bonilla y el recurrido suscribieron una serie de estipulaciones las cuales presentaron junto con una petición de divorcio por la causal de consentimiento mutuo.(6) Entre éstas

---

(5) El problema adquiere características alarmantes si consideramos que a raíz de la decisión de *Figueroa Ferrer* v. *E.L.A.*, 107 D.P.R. 250 (1978), la presentación de demandas de divorcio basadas en la causal de consentimiento mutuo cogió gran auge. De hecho, el divorcio por consentimiento mutuo se ha convertido en la principal causal de divorcio en Puerto Rico. Voto particular emitido por el Juez Asociado Señor Hernández Denton. *Torres, Ex parte*, 118 D.P.R. 469 (1987).

La ausencia de legislación específica en esta área ha tenido como consecuencia el que los jueces de instancia se hayan visto precisados a elaborar distintos mecanismos procesales para confrontarse con los múltiples problemas que surgen durante la tramitación de estos casos. I. Picó de Hernández, *Los problemas procesales del divorcio por consentimiento mutuo*, Año 4, Núm. 1, Boletín Judicial 12 (enero-marzo 1982). *Apuntes sobre procedimientos judiciales en torno a la familia*, Secretariado de la Conferencia Judicial, 1984, pág. 198.

Cabe señalar que a pesar de que en la Legislatura se han presentado varios proyectos de ley para adicionar la causal de consentimiento mutuo al Art. 96 del Código Civil, 31 L.P.R.A. sec. 321, y reglamentarla, ninguno ha sido aprobado. Véanse: P. del S. 447 de 2 de febrero de 1982, P. de la C. 188 de 21 de marzo de 1981 y P. del S. 747 de 4 de marzo de 1986.

(6) En lo referente a los alimentos, se estipuló que el peticionario pagaría la suma de mil dólares ($1,000) mensuales para los hijos y trescientos dólares ($300) para la ex esposa. Además, se incluyó bajo el acápite de *OTRAS MATERIAS ESTIPULADAS* lo siguiente:

"1. El peticionario pagará los gastos de medicina para los menores y la peticionaria. Estas medicinas se tomarán a crédito en una [f]armacia y el peticionario las pagará mensualmente.

"2. El peticionario proveerá un plan médico para sus hijos y la peticionaria. Mientras la peticionaria pueda incluirse en el plan grupal así se hará, pero si por razón de normas del propio plan médico no puede permanecer en él, se le proveerá el seguro médico del Hospital Auxilio Mutuo mientras ésta permanezca soltera o no trabaje.

. . . . . . . .

"4. El peticionario es responsable de proveer a los hijos toda la ropa y zapatos escolares y de uso general.

"5. El peticionario es responsable de pagar todos los gastos generados por

se encontraba la de pensión alimenticia para los tres hijos menores y para la señora Bonilla. El 28 de junio el tribunal dictó sentencia que decretó el divorcio y aceptó las estipulaciones. La sentencia se notificó el 8 de julio de 1985. El 2 de agosto, apenas veinticinco (25) días después de dicha notificación y sin aún haber comenzado a cumplir con lo estipulado, el recurrido presentó una moción de rebaja de pensión alimenticia. Adujo como razón que la estipulación sobre pensión alimenticia original "fue aceptada a base de unas condiciones suspensivas de ingresos adicionales . . . a base de unas igualas de servicios profesionales prometidos que no se cumplieron; [ya que] la compañía para la cual trabaja el peticionario prohibió terminantemente hacer trabajos particulares". Cabe señalar que la estipulación original, sometida al tribunal y aceptada por éste, no contiene la alegada condición suspensiva. Esta moción se vio ante el mismo juez que había aceptado las estipulaciones anteriores.

---

los hijos durante todas las etapas de estudio de éstos desde la educación pre-escolar hasta la universitaria.

"6. El peticionario se obliga a mantener al día unas pólizas de seguro para los hijos de una cubierta no menor de $100,000.00. El peticionario entregará estas pólizas a la peticionaria y mostrará evidencia a ella de que está al día en el pago de dichas pólizas.

"8. El peticionario se obliga a pagar los gastos que se generan en los siguientes renglones: al poner unas rejas en el laundry; los gastos del arreglo de la cerradura de la puerta del frente; comprar juego de cuarto para Luis Javier; al poner unas venetia[n] blinds, puertas de cristal, ventanas; mantenimiento y tratamiento de situación existente en el techo de la residencia y el pago de unos espejuelos o lentes de contacto para la peticionaria.

"11. Los peticionarios se obligan a dialogar en forma armoniosa y razonable para revisar la pensión alimenticia dentro de unos períodos de tiempo, basada esta revisión en las necesidades de los menores por razón de su crecimiento y cambio de sus condiciones de vida y tomando en consideración la capacidad económica del peticionario.

"12. El peticionario es responsable de pagar los gastos y honorarios de abogado en la presente acción, ascendentes a $520.00." Apéndice, págs. 2–4.

El 10 de octubre de 1985, otra vez fundamentándose en una estipulación de las partes, el tribunal, en corte abierta, dictó una orden que concedía la rebaja. Esta estipulación nunca se sometió por escrito. Las minutas del tribunal que recogen la estipulación leen escuetamente así:

El promovente pasará la suma de $1,000.00 mensuales de pensión alimenticia más un seguro médico por el período de un año.(7)

Como podrá observarse, no se especifica cómo se dividirá la pensión ni qué tipo de seguro médico será el que se obtenga ni a quiénes cubrirá. Tampoco incluye los hechos en que se basó.

Así las cosas, la peticionaria cambió de representación legal y presentó una moción de relevo al amparo de la Regla 49.2 de Procedimiento Civil, *supra*. Alegó, en síntesis, que el recurrido había ofrecido información falsa sobre su situación económica y que según esta información se hizo la estipulación y se indujo al tribunal a aceptarla. La moción se señaló para vista. Es en esta vista donde por primera vez se le presenta al tribunal prueba sobre los ingresos y gastos del recurrido. Luego de hacer determinaciones de hechos, el tribunal denegó la moción y ratificó la rebaja concedida.

De la transcripción de evidencia de esta vista surge que el recurrido señor Negrón Rivera es una persona versada en el mundo de las finanzas: contable público autorizado de profesión. A esta fecha llevaba nueve (9) años trabajando para la Touche Ross & Co. Ocupaba una posición de gran responsabilidad, gerente auditor de la compañía. El señor Negrón Rivera declaró que cuando suscribió la estipulación original sobre pensión alimenticia, conocía que la política de la compañía era no permitir igualas particulares. Alegó, sin embargo, que ya que en la compañía "se rumoraba entre [los

---

(7) Minuta de 10 de octubre de 1985, Apéndice, pág. 13.

empleados, pues] no hubo decisión de la gerencia que estaban dejando igualas" (T.E., pág. 95.), suscribió el convenio sobre pensión alimenticia para sus hijos menores y ex esposa. Aceptó que después de haberse decretado el divorcio recibió un aumento de sueldo,[8] un bono de mil ochocientos cincuenta y nueve dólares ($1,859)[9] y que una cantidad similar la recibiría unos meses más tarde. Expresó que también recibe una serie de beneficios marginales de la compañía.[10] Declaró, además, sobre algunos trabajos profesionales particulares que había hecho durante su matrimonio y después de haberse decretado el divorcio, pero aclaró que no había cobrado.[11] Sólo en una ocasión, con posterioridad al divorcio, recibió un "regalo" de cien dólares ($100) de una señora por un trabajo profesional que le hizo y no cobró. También después del divorcio refinanció sus deudas y logró así rebajar los pagos mensuales.

En su testimonio declaró que el día después de la vista sobre rebaja de pensión alimenticia "surgió la ocasión" de comprar un carro SAAB. Para aprovechar la oferta dio tres mil dólares ($3,000) de pronto y cuatro mil dólares ($4,000) unos días más tarde. Esta suma la consiguió mediante dinero prestado por sus hermanos y una amiga. Luego refinanció el carro con *"lease way"*.

---

[8] T.E., pág. 84.

[9] T.E., pág. 98 y pág. 34 del Apéndice del recurso de *certiorari*.

[10] Estos beneficios marginales incluyen: Seguro de Vida, Plan de Pensiones, Seguro de Incapacidad Permanente y el reembolso de todos los gastos incurridos en el desempeño de sus labores.

[11] T.E., págs. 124–127.

Específicamente en relación con un negocio de lavado de carros (*car wash*) declaró:

"Yo le preparé los libros de contabilidad en el mes de junio al señor Corretjer, no le cobré nada porque no podía tener igualas. Ya descontinué de hacerl[o] . . . yo le cuadré los libros a junio treinta y se los dejé listos para que un contable se los lleve." T.E., pág. 127.

■ Aunque de ordinario no intervenimos con la apreciación de la prueba que hacen los tribunales de instancia, un balance racional, justiciero y jurídico de la totalidad de la prueba y de los documentos que obran en autos nos lleva a concluir, distinto al tribunal de instancia, que al momento de solicitar la rebaja de pensión alimenticia el recurrido se encontraba en mejor situación económica que cuando suscribió la estipulación original; que la estipulación original no se hizo sujeta a la condición suspensiva de obtener igualas profesionales particulares; que como profesional responsable conocedor de las finanzas el señor Negrón Rivera necesariamente tuvo que evaluar y tomar en cuenta su situación económica antes de suscribir dicha estipulación; que no se justificaba la compra del automóvil *presentable* SAAB en momentos en que alegaba que no podía cumplir con su obligación legal y moral de alimentar adecuadamente a sus hijos menores y a su ex esposa, y que por lo tanto no se justificaba la rebaja de la pensión. *Abudo Servera* v. *A.T.P.R.*, 105 D.P.R. 728, 731 (1977); *Maryland Casualty Co.* v. *Quick Const. Corp.*, 90 D.P.R. 329, 336 (1964).

Estamos de acuerdo con la peticionaria en que ante una lectura y análisis de las transcripciones y los documentos que obran en autos cobra vida la frase del ex Juez Asociado Raúl Serrano Geyls: "Los Jueces no debemos, después de todo, ser tan inocentes como para creer declaraciones que nadie más creería." *Pueblo* v. *Luciano Arroyo*, 83 D.P.R. 573, 582 (1961).

## II

### *La Regla 49.2(6) de Procedimiento Civil*

■ Reiteradamente hemos resuelto que los casos relacionados con alimentos de menores están revestidos del más alto interés público. *Rodríguez Avilés* v. *Rodríguez Beruff*, 117 D.P.R. 616 (1986); *Otero Fernández* v. *Alguacil*, 116

D.P.R. 733 (1985); *Martínez* v. *Rivera Hernández*, 116 D.P.R. 164 (1985); *Guadalupe Viera* v. *Morell*, 115 D.P.R. 4 (1983); *Fernández* v. *Davison*, 80 D.P.R. 253 (1958). En éstos, el interés no puede ser otro que el bienestar del menor. La obligación alimenticia "tiene su fundamento en el *derecho a la vida* configurado como un derecho de la personalidad". (Énfasis y comillas en el original.) P. Beltrán De Heredia, *La obligación legal de alimentos entre parientes,.* Salamanca, Ed. Anaya, 1958, pág. 33. El Art. 107 del Código Civil, 31 L.P.R.A. sec. 383, a su vez, hace imperativo e incidental al decreto de divorcio que se incluya una disposición sobre los alimentos de los hijos menores. El concepto alimentos incluye todo lo indispensable para el sustento, habitación, vestido, asistencia médica y educación del alimentista, según la posición social de la familia. Art. 112 del Código Civil, 31 L.P.R.A. sec. 561; *Guadalupe Viera* v. *Morell*, supra. Toda petición de divorcio por la causal de consentimiento mutuo tiene que venir acompañada de una estipulación sobre los alimentos de los hijos menores. *Figueroa Ferrer* v. *E.L.A.*, supra. El tribunal no viene obligado a impartirle su aprobación a la estipulación que se le someta. *Fernández* v. *Davison*, supra, págs. 256–257.

Con estos principios y normas en mente pasemos a considerar el vehículo procesal utilizado por la peticionaria para cuestionar la rebaja concedida por el tribunal.

 Comenzaremos por indicar que cualquier defecto "en la súplica del remedio, no será óbice para que el tribunal conceda el remedio que proceda de acuerdo con las alegaciones y la prueba". Regla 70 de Procedimiento Civil, 32 L.P.R.A. Ap. III.(12) También se debe tener presente que

---

(12) En la moción de relevo la peticionaria equivocadamente fundamentó la solicitud de remedio en el inciso 3 de la Regla 49.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

cuando de hacer justicia se trata, especialmente en áreas de gran interés público, no hay moldes técnicos que limiten o aprisionen los remedios justos. Aunque "la Regla 49.2 no es una llave maestra para reabrir a capricho [un asunto] ya adjudicado, el inciso 6 de dicha Regla es amplio para permitir que se corrija un error a todas luces injusto".[13] *Sucn. Bravo v. Srio. de Hacienda*, 106 D.P.R. 672, 675 (1978); J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña, Procedimiento Civil*, San Juan, Publicaciones J.T.S., 1984, Cap. VIII, págs. 266–267; 11 *Wright & Miller, Federal Practice and Procedure*, Sec. 2864 (1987); *Klapprott v. United States*, 335 U.S. 601, 614–615 (1948); *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5to Cir. 1985). Esto resulta todavía más apropiado en un caso como el de autos, ya que los dictámenes sobre pensión alimenticia siempre están sujetos a cambio, según varíen las circunstancias de los alimentistas o del alimentante. Cabe señalar, que si impidiéramos el uso de este vehículo procesal y permitiéramos que subsistiera la orden del tribunal que se niega a dejar sin efecto la orden por la cual se rebajó la pensión alimenticia, los principalmente perjudicados serían los tres (3) hijos menores de las partes, quienes ni siquiera fueron partes propiamente en el proceso. *Kinsella v. Kinsella*, 181 N.W.2d 764, 769 (N.D. 1970). Denegar bajo estas circunstancias el remedio solicitado por un tecnicismo procesal, equivaldría a abdicar nuestro deber de salvaguardar el bienestar de estos menores.

---

[13] Regla 49.2(6) de Procedimiento Civil, *supra:*

"Mediante moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las siguientes razones:

. . . . . . . .

"(6) Cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia."

## III

*Las estipulaciones relacionadas con pensiones alimenti-cias de menores*

Según indicáramos, de la prueba desfilada en la vista sobre la moción de relevo, surge con evidente claridad que la situación económica del peticionario no había sufrido un cambio sustancial luego que las partes estipularon la pensión; que éste aceptó la estipulación original, sin condición suspensiva alguna, y que tomó en consideración su condición económica, ingresos y gastos al aceptar el convenio. Si algo reflejó la prueba fue que, al suscribir las partes la segunda estipulación, la condición económica del recurrido había mejorado.

Reiteradamente hemos resuelto que una estipulación suscrita por las partes y aceptada por el tribunal, que finaliza un pleito o como en este caso un incidente dentro del pleito, constituye un contrato de transacción que las obliga. Art. 1709 del Código Civil, 31 L.P.R.A. sec. 4821; *Sucn. Román* v. *Shelga Corp.*, 111 D.P.R. 782 (1981); *Lausell Marxuach* v. *Díaz de Yáñez*, 103 D.P.R. 533 (1975); *Díaz Torres* v. *Rivera*, 96 D.P.R. 560 (1968); *Canino* v. *Bellaflores*, 78 D.P.R. 778 (1955). Por su naturaleza, el contrato de transacción debe interpretarse de forma restrictiva.[14] En lo que no sean incompatibles con las normas que regulan los contratos de transacción,[15] son de aplicación las reglas generales so-

---

[14] El Art. 1714 del Código Civil, 31 L.P.R.A. sec. 4826, específicamente limita la transacción "rigurosamente a los objetos expresamente determinados, o que por una inducción necesaria de sus palabras deben reputarse incluidos". Scaevola nos indica que "[l]a razón está sin duda en que las transacciones se otorgan, generalmente, con carácter complejo, por las entregas u obligaciones recíprocas de los contratantes, con sacrificios mutuos de régimen excepcional en algunos aspectos, y, por tanto, no deben ser interpretados éstos con extensión, sino limitadamente, aunque sin descuidar lo de la reciprocidad como norma interpretativa". Q.M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1953, T. XXVIII, pág. 355.

[15] Arts. 1709–1718 del Código Civil, 31 L.P.R.A. secs. 4821–4830.

bre la interpretación de contratos. Ahora bien, en relación con la interpretación de los contratos, Díez-Picazo nos dice que éstos "deben interpretarse de acuerdo con la buena fe . . . [que es] un [*standard*] de conducta arreglada a los imperativos éticos exigibles de acuerdo con la conciencia social imperante . . . . Los contratos han de ser interpretados presuponiendo una lealtad y una corrección en su misma elaboración, es decir, *entendiendo que las partes al redactarlos quisieron expresarse según el modo normal propio de gentes honestas y no buscando circunloquios, confusiones deliberadas u oscuridades* . . . . El contrato debe ser interpretado de manera que el sentido que se le atribuya sea el más conforme para llegar a un desenvolvimiento leal de las relaciones contractuales y para llegar a las consecuencias contratuales exigidas conforme a las normas éticas. La buena fe impone también la aplicación de las ideas de confianza y autorresponsabilidad en la interpretación . . . . *Las declaraciones de voluntad deben interpretarse en el sentido más conforme con la confianza que hayan podido suscitar de acuerdo con la buena fe*". (Énfasis suplido.) L. Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial*, Madrid, Ed. Tecnos, 1979, Vol. I, Cap. XI, Sec. 45, págs. 251–252.

█ Si aplicamos estos principios de derecho y normas interpretativas al caso de autos, se puede inferir que la peticionaria, al acceder al convenio, confió en que el recurrido daría fiel cumplimiento a lo estipulado. Este principio de buena fe en la interpretación de los contratos reafirma nuestra apreciación de la prueba de que la estipulación original no se hizo sujeta a una condición suspensiva.(16) Decidir lo contrario equivaldría a ir no sólo contra el principio de la

---

(16) Una condición suspensiva tan importante como ésta, que podía afectar drásticamente los intereses y el bienestar de los menores, tenía que constar por escrito en la estipulación original si se quería hacer valer. No podía ser objeto de una inferencia.

buena fe, sino premiar actitudes y posturas contrarias al serio cumplimiento con la obligación moral y legal que tiene un padre de alimentar a sus hijos menores.

Deseamos consignar que como regla general el juez aceptará los convenios y las estipulaciones a las cuales las partes lleguen para finalizar un pleito y este acuerdo tendrá efecto de cosa juzgada entre las partes. *Canino* v. *Bellaflores*, supra; *Lausell Marxuach* v. *Díaz de Yáñez*, supra.(17) Sin embargo, en el caso de convenios relacionados con pensiones alimenticias de menores y a manera de excepción, el juez tiene el deber de asegurarse que lo acordado no es dañino para los menores. Esto implica que lo estipulado satisface adecuadamente las necesidades de los menores y que el alimentante tiene medios económicos suficientes para cumplir con lo acordado. Nuestro sistema, al igual que el español, "ha preferido seguir un criterio práctico de límites indefinidos en donde pueda operar la discrecionalidad judicial y ha prescindido de controles de signo positivo muy difíciles de determinar, consiguiendo de este modo equilibrar la libertad pacticia [*sic*] de los cónyuges con la tutela de los intereses correspondientes a los miembros más necesitados de protección". M. López de Alarcón, *El Nuevo Sistema Matrimonial Español*, Madrid, Ed. Tecnos, 1983, págs. 330–331. Para poder cumplir con este deber tutelar sobre los intereses de los menores, las partes vienen obligadas a aportar las pruebas necesarias para que el juez pueda "valorar el daño o el perjuicio oculto entre las cláusulas de un acuerdo, lo que tendrá que hacerse con la mayor aproximación objetiva, en función

---

(17) En relación con la posibilidad de dejar sin efecto un contrato de transacción, el Art. 1716 del Código Civil, 31 L.P.R.A. sec. 4828, dispone:

"La transacción en que intervenga error, dolo, violencia o falsedad de documentos, está sujeta a lo dispuesto en la sec. 3404 de este título.

"Sin embargo, no podrá una de las partes oponer el error de hecho a la otra siempre que ésta se haya apartado por la transacción de un pleito comenzado."

de las reales circunstancias personales y económicas de los cónyuges y de los hijos, *sin que la aceptación convencional por un cónyuge de una situación que puede ser perjudicial para él o para los hijos, obligue al Juez a aprobar las estipulaciones*, e igualmente deberá rechazarlas cuando no se han demostrado hechos fundamentales para que el Juez pueda formar juicio sobre aquellos daños y perjuicios del cónyuge y de los hijos". (Énfasis suplido.) López de Alarcón, *op. cit.* La comprobación la podrá hacer el juez de manera informal en su despacho o mediante vista evidenciaria, según a su discreción determine que se adelantan mejor los principios tutelares de protección de los intereses de los menores y economía procesal.[18]

## IV

*La modificación de una estipulación sobre pensión alimenticia*

 La doctrina ha establecido que la alteración del convenio o estipulación sobre pensión alimenticia en ocasión de un divorcio procederá solamente cuando exista un cambio sustancial en las circunstancias que dieron lugar u originaron el mismo. No basta cualquier cambio en las circunstancias; éste tiene que ser sustancial. E. Fosar Benlloch, *Estudios de Derecho de Familia*, Barcelona, Ed. Bosch, 1986, T.

---

[18] El tribunal tiene amplia discreción en cuanto a la forma y manera en que entenderá en estos asuntos. La prueba podrá someterse por escrito o mediante testimonio oral. El juez examinará cuidadosamente el convenio y se cerciorará de que el mismo no ha sido producto de coacción o presiones indebidas por parte de los cónyuges; que lo convenido satisface adecuadamente las necesidades de los alimentistas, y que es de posible cumplimiento para el alimentante. Véanse: *Figueroa Ferrer* v. *E.L.A.*, supra; voto particular emitido por el Juez Asociado Señor Hernández Denton, en *Torres, Ex parte*, supra. Los abogados de las partes, a su vez, se asegurarán de que las estipulaciones que se presenten protejan adecuadamente el bienestar de los menores; que no sean onerosas o imposibles de cumplir, y que no hayan sido presentadas con el único propósito de obtener el divorcio por esta causal. *Los Pactos Conyugales de Separación de Hecho: Historia y Presente*, Univ. de Sevilla, 1987, pág. 131.

II Vol. 1, pág. 309; López de Alarcón, *op. cit.*, pág. 339; C.M. Entrena Klett, *Matrimonio, Separación y Divorcio*, 2da ed., Pamplona, Ed. Aranzadi, 1984, pág. 588.

Sobre este particular, jueces de familia en España han manifestado que "la alteración que justifica la modificación de la cuantía de la pensión, ha de ser importante, sustancial dice el texto legal, por lo que no cualquier variación, en más o en menos, dará lugar a la modificación de la pensión, sino sólo aqu[e]lla que sea sustancial en relación con el estado anterior de fortuna de los cónyuges". R. García Varela *et al., La ley de divorcio: experiencias de su aplicación*, Madrid, Ed. Colex, 1982, pág. 98. Cónsono con lo anterior, en Argentina se ha resuelto que la carga de la prueba para demostrar una variación en las circunstancias vigentes al momento en que se estableció el convenio de la pensión alimenticia para los efectos de conseguir una reducción de la misma corresponde al alimentante. 1981-B Rev. Jur. Arg. La Ley 554 (1981). En *Valencia, Ex parte*, 116 D.P.R. 909 (1986), haciéndonos eco de estos principios, resolvimos que una modificación del convenio relativo a la pensión alimenticia de hijos menores procede sólo, si a la luz de la *nueva prueba* presentada por el peticionario, se demuestra que éste ha sufrido cambios que afecten su capacidad para proveer alimentos. En casos de pensiones alimenticias de menores, tanto el tribunal como los abogados deben indicarle a las partes que una vez aceptadas las estipulaciones por el tribunal las mismas sólo se modificarán cuando se le demuestre al tribunal que verdaderamente ha ocurrido un cambio sustancial que afecte la capacidad del alimentante para proveer los alimentos o las necesidades de los alimentistas.

La oportuna y activa intervención del tribunal en estos asuntos minimizará la necesidad de que las partes tengan que presentar nuevas y reiteradas solicitudes para modificar las pensiones estipuladas; de esta manera disminuye la proliferación de incidentes litigiosos. Esto a su vez tendrá

el beneficioso efecto de evitar que se continúen congestionando los calendarios de las ya sobrecargadas Salas de Relaciones de Familia. Y finalmente, y de mayor importancia, la intervención del tribunal también contribuirá a aliviar las tensiones, roces y antagonismos que generan los incidentes sobre pensiones alimenticias, que en nada contribuyen al diálogo y a la comunicación entre seres humanos, y que en definitiva afectan adversamente a los hijos menores de edad. El beneficio derivado por la estructura familiar desembocará en una mayor paz social. Los resultados de que el tribunal se asegure de que la estipulación que acepta es ordenada, específica, racional y razonable, se harán sentir favorablemente en todas las fases y vertientes de los trámites subsiguientes.

## V

*Conclusión*

En el caso de autos no hubo cambio sustancial en la condición económica del alimentante. Ésta permanece esencialmente igual a lo que era al momento en que el recurrido aceptó la estipulación original. Ante esta circunstancia su deber es "distribuir sus ingresos de forma que [le permita] cumplir con su obligación . . .". *López Gómez* v. *Tribunal Superior*, 103 D.P.R. 866, 868 (1975).

Luego de desfilada la prueba en la vista sobre la moción al amparo de la Regla 49.2, *supra,* el tribunal de instancia, al comprobar que efectivamente no hubo cambio sustancial en las condiciones económicas del alimentante, cumpliendo con su deber tutelar de proteger el bienestar de los menores, en bien de la justicia y la economía procesal, debió acoger la moción y relevar a la peticionaria de los efectos de la rebaja de pensión alimenticia que había decretado.

*Se dictará sentencia conforme a lo aquí expresado.*

El Juez Presidente Señor Pons Núñez concurre con el resultado sin opinión escrita.