*302 Opinión disidente emitida por la
Juez Asociada Señora Ro-dríguez Rodríguez,
a la que se une el Juez Asociado se-ñor Estrella Martínez.
La controversia ante nuestra consideración versa sobre si un alimentante puede extinguir unilateralmente su obli-gación de alimentar cuando el alimentista culmina estu-dios conducentes al grado de bachillerato. Por entender que se equivoca la mayoría al sostener que la pensión ali-mentaria a favor del alimentista se extinguió automática-mente al éste terminar sus estudios de bachillerato, disiento de su curso de acción.
I
Alberto A. Villafañe Rivera (alimentista) advino a la mayoría de edad en el 2002. Conforme a esto, el señor Vi-llafañe González (alimentante) solicitó al Tribunal de Pri-mera Instancia que se le relevase de su obligación alimentaria. Sin embargo, el alimentista solicitó interven-ción y expresó que al momento se encontraba cursando su tercer año de bachillerato, por lo cual subsistía su necesi-dad de alimentos. Así las cosas, se refirió la solicitud al oficial examinador, quien impuso una pensión alimentaria de trescientos cincuenta dólares mensuales pagaderos directamente al alimentista. Posteriormente, la cantidad se modificó para aumentarse a cuatrocientos dólares mensua-les, también pagaderos directamente al alimentista. Se dispuso que la pensión se pagara mientras el alimentista estuviese estudiando.
En mayo de 2004 el alimentante dio por extinguida de forma unilateral su obligación alimentaria. Razonó que toda vez que el alimentista había concluido sus estudios subgraduados, su obligación se daba por terminada. Así las *303 cosas, desapareció de la vida del alimentista, cambió su dirección y no le notificó el cambio ni a su hijo ni al tribunal primario.
Posteriormente, en el 2009, el alimentante solicitó ante el Tribunal de Primera instancia que se cerrara sin deuda la cuenta abierta en la Administración para el Sustento de Menores (ASuMe). Expresó que la deuda que se reflejaba en ASuMe era irreal, que sus hijos habían advenido a la mayoría de edad y que su obligación de alimentar había cesado. Por otra parte, el alimentista se opuso y sostuvo que al momento de que el alimentante pidiera el cierre de la cuenta adeudaba la cantidad de 22,400 dólares en con-cepto de pensión alimentaria por los años en que el alimen-tista había estado estudiando Derecho.
Luego de varios incidentes procesales, el tribunal pri-mario concluyó que, si bien el padre había cesado de pagar la pensión alimentaria unilateralmente y cambiado su dirección sin previa notificación, no procedía el pago de la alegada deuda. Fundamentó su razonamiento en que el tiempo durante el cual el alimentista estudió para tomar los exámenes de admisión a la Escuela de Derecho no po-día computarse como tiempo de estudio. Así, sostuvo que el alimentista había interrumpido sus estudios por el tér-mino de un año y que, por lo tanto, no procedía el pago de pensión alimentaria.
Inconforme, el alimentista acudió al Tribunal de Apela-ciones y señaló varios errores. El Tribunal de Apelaciones concluyó que el alimentante no podía culminar su obliga-ción de alimentar unilateralmente y que, en cambio, debió acudir al tribunal inferior para que éste le relevase de su obligación de alimentar.
En desacuerdo, el alimentante recurre a este Tribunal y señala que la decisión del foro intermedio es errada, toda vez que no tomó en consideración la ausencia de prueba para sostener la deuda y que actuó de manera prejuiciada y parcializada. Además, expresó que la deuda estaba pres- *304 crita y que esta no había sido debidamente tramitada en el tiempo correspondiente.
La mayoría del Tribunal hoy le da la razón al peticiona-rio y revoca el dictamen recurrido. Uña mayoría de este Tribunal resuelve que, considerando que no existe eviden-cia alguna que indique que la obligación alimentaria se extendía más allá de los cuatro años del bachillerato, la obligación se extinguió automáticamente cuando el ali-mentista terminó sus estudios subgraduados. Indica que, al ésta cesar automáticamente, era innecesario que el pe-ticionario acudiese al foro primario y solicitase el relevo de la pensión alimentaria. Por el contrario, indica que si el alimentista necesitaba ayuda adicional para continuar es-tudios posgraduados, debió recurrir al foro judicial para solicitarla. Soy del criterio de que se equivoca la mayoría al así decidir. Veamos.
II
El deber alimenticio entre determinados parientes que impone el ordenamiento jurídico es una de las principales consecuencias que surgen de la relación jurídico-familiar. F. Puig Peña, Compendio de Derecho Civil español, Madrid, Eds. Pirámide, 1976, pág. 491. Nuestro ordenamiento define los alimentos como todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia. Los alimentos comprenden también la educación e instrucción del alimentista, cuando es menor de edad. 31 L.P.R.A. sec. 561. El deber de alimentar que tienen los padres respecto de sus hijos no emanci-pados está contenido en el Art. 153 del Código Civil, 31 L.P.R.A. sec. 601. Se considera un efecto de la patria potes-tad y los padres están obligados a proveerlos hasta que sus hijos advengan a la mayoridad. 31 L.P.R.A. sec. 561. Al ser un corolario de la patria potestad, se mantiene hasta el momento en que la patria potestad culmina.
*305 Empero, existe una segunda fuente de la obligación de alimentar. Esta es la que surge del deber de los parientes de alimentarse entre sí. Es decir, aun cuando el alimen-tista advenga a la mayoridad, si éste necesita alimentos y quien tenga la obligación de prestarlos tiene capacidad para proveerlos, este último deberá satisfacerlos. 31 L.P.R.A secs. 562 y 565. Esto es así porque los alimentos están intrínsecamente vinculados al derecho a la vida y tienen su génesis en el derecho natural, en los lazos indi-solubles de solidaridad humana y de profunda responsabi-lidad de la persona por los hijos que trae al mundo, que son valores de la más alta jerarquía ético-moral y que consti-tuyen una piedra angular de toda sociedad civilizada. Arguello v. Argüello, 155 D.P.R. 62, 69 (2001).
Nuestro Código Civil dispone específicamente cuándo la obligación alimentaria entre parientes cesa. De esta manera, el Art. 149 sostiene que la obligación cesa con la muerte del obligado. 31 L.P.R.A. sec. 568. Igualmente, el Art. 150 contiene unas causas adicionales para el cese de esta obligación, a saber: (1) cuando las condiciones econó-micas del alimentante cambian de manera tal que no po-dría satisfacerlos a no ser a expensas de sus propias nece-sidades y la de su familia; (2) cuando el alimentista no necesite los alimentos porque puede ejercer una profesión o ha mejorado su fortuna; (3) cuando el alimentista sea he-redero forzoso y ha cometido alguna falta que da lugar a la desheredación; (4) cuando el hijo alimentista tenga necesi-dad de alimentos por causa de su mala conducta o falta de aplicación para el trabajo. 31 L.P.R.A. sec. 569. Asimismo, expresamos anteriormente que la obligación alimentaria que emana de la necesidad de alimentos entre parientes y que requiere que el menor tenga necesidad de una pensión alimentaria no cesará automáticamente con la emancipa-ción del menor, ni en el caso de que éste llegue a la mayoría de edad. Rodríguez Amadeo v. Santiago Torres, 133 D.P.R. 785, 793 (1993).
*306 Por esa razón hemos sido enfáticos a la hora de afirmar que “el deber legal de todo padre o madre de proveer los medios económicos necesarios para la educación de un hijo —proporcional siempre ‘a los recursos del que los da y a las necesidades del que los recibe ...’— no puede cesar ‘ipso facto’ meramente por el hecho de que el hijo ha alcanzado su mayoría de edad”. (Escolio omitido). Key Nieves v. Oyóla Nieves, 116 D.P.R. 261, 265 (1985). Justamente son esos lazos indisolubles de solidaridad humana y amor de los cuales hablamos en Argüello los que fundamentan esta responsabilidad de los padres de ayudar a sus hijos en la consecución de un título universitario.
En el 1985, en Key Nieves, a la hora de decidir que pro-cedía que el padre contribuyera a los estudio de su hija universitaria aún después de que ésta adviniera a la ma-yoridad, tuvimos en cuenta que “el mundo en que vivimos hoy día, donde el éxito que se pueda obtener guarda rela-ción directa con la preparación académica que poseamos y donde la competencia es la orden del día, la percepción de que los estudios universitarios constituyen un ‘lujo’ es cosa del pasado; dichos estudios se han convertido en una necesidad”. Key Nieves v. Oyóla Nieves, supra, pág. 266. Probablemente, hace más de veinticinco años atrás, la pre-paración postgraduada no se veía como una necesidad, pero aun así, reconociendo la importancia de la educación universitaria, expresamos que “[l]a situación particular que representan los estudios postgraduados, como maes-trías o doctorados, y el estudio de aquellas profesiones que requieren en exceso de los cuatro años de bachillerato ame-rita una consideración especial y separada que, como regla general, tendrá que ser resuelta de acuerdo a los hechos particulares de cada caso”. (Escolio omitido). Id., págs. 266-267.
Fue por ello que sostuvimos que en el caso de que el hijo continúe estudios postgraduados, se considerarán los es-fuerzos realizados, su aptitud para los estudios que desea *307 continuar, los logros académicos y la razonabilidad del ob-jetivo deseado. Luego de sopesados esos factores, el tribunal sentenciador determinará si la solicitud de alimentos es meritoria o no lo es. Key Nieves v. Oyóla Nieves, supra. Asimismo, expresamos que es el alimentista quien tiene el deber de solicitar los alimentos luego de que cumpla la mayoría de edad porque es a éste a quien le toca probar la necesidad de los mismos. Id. Sobre lo anterior, la profesora Torres Peralta señala que
... el foro judicial tiene facultad para determinar el pago de asistencia económica o de alimentos al hijo mayor de edad estudiante post graduado, en su amplia acepción de techo, co-mida, vestimenta, educación y asistencia médica, o de asisten-cia económica a base de las situaciones particulares de que se trate. Ello es así, siempre que el hijo mayor de edad que soli-cite alimentos o asistencia económica cubra los criterios men-cionados, y además interese cursar estudios adicionales ya sea de maestría o doctorado, o de cualquier profesión o prepara-ción vocacional que requiera para ello estudios adicionales más allá de los cuatro años de estudios universitarios. S. Torres Peralta, La Ley de Sustento de Menores y el derecho alimentario en Puerto Rico, San Juan, Ed. STP, T. I, 2006-2007, págs. 5.38-5.39.
Igualmente, conviene recalcar que los dictámenes sobre pensión alimenticia siempre están sujetos a cambio, según varíen las circunstancias de los alimentistas o del alimentante. Negrón Rivera y Bonilla, Ex parte, 120 D.P.R. 61, 73 (1987). En este sentido, aunque la obligación ali-mentaria subsista porque no se ha dado ninguna de las causas de cese mencionadas anteriormente, se podrá soli-citar los tribunales la revisen o modifiquen.
Ahora bien, a la hora de solicitar un cambio en la pen-sión alimentaria, debe tenerse en cuenta la Regla 8.4 de Procedimiento Civil, que dispone que “[l]a petición para que se expida una orden se hará mediante una moción, la cual, a menos que se haga durante una vista o un juicio, se hará por escrito, haciendo constar con particularidad los fundamentos legales y argumentos en que se basa y expo- *308 niendo el remedio o la orden que se interesa”. 32 L.P.R.A. Ap. V. Es por ello que Valencia, Ex parte, 116 D.P.R. 909 (1986), sostuvimos que, como regla general, la fecha de efectividad de una rebaja de pensión alimentaria deberá ser la del día cuando se emitió el dictamen. Está claro que, sin un dictamen judicial, no se puede decretar una rebaja de pensión alimentaria y, mucho menos, su relevo. Esto es así porque “[l]a pensión ha de satisfacerse en la cantidad dispuesta por el tribunal, sin descuentos hechos a voluntad del alimentante”. Guadalupe Viera v. Morell, 115 D.P.R. 4, 16 (1983).
III
Como hemos visto, la obligación de alimentar surge de principalísimos principios, como son la solidaridad, el amor y la responsabilidad de los padres respecto a sus hijos. Es por ello que, aun cuando la obligación de alimentar deri-vada de la patria potestad cesa por el hijo haber advenido a la mayoridad, si éste necesita la ayuda de su padre y su padre puede ayudarle, los tribunales podrán fijar una pen-sión alimentaria. Claro está, además de fijarla podrá im-poner condiciones para que el alimentista mayor de edad permanezca siendo acreedor a la pensión.
Ahora bien, una vez impuesta la pensión, la extinción de ésta, a diferencia de lo planteado por una mayoría de esta Curia, no puede estar al arbitrio del alimentante. Si suce-den cambios que ameriten una rebaja o el relevo de la pen-sión alimentaria, el alimentante deberá solicitarlo al tribunal. Son los tribunales los únicos con autoridad para declarar extinta la obligación. Para ello, el alimentante de-berá comparecer al tribunal mediante una moción de re-levo de pensión alimentaria y fundamentar su pedido se-gún se dispone en la Regla 8.4 de Procedimiento Civil.
En el caso ante nuestra consideración, el alimentante solicitó el relevo del pago de la pensión alimentaria en el *309 mismo momento cuando el alimentista advino a la mayoría de edad. Sin embargo, el alimentista compareció ante el foro inferior y sostuvo que aún estaba estudiando, por lo cual requería que el alimentante le proporcionara alimen-tos para continuar con sus estudios. El foro primario en-contró probada la necesidad de los alimentos y fijó una pensión alimentaria. Además, le impuso al alimentista la obligación de evidenciar su aprovechamiento académico al final de cada semestre de estudio.
En mayo de 2004 el alimentante, sin solicitar el relevo de pago de la pensión alimentaria al tribunal de instancia, dejó de cumplir con su obligación. Además, cambió su dirección sin notificar al tribunal ni al alimentista. Años más tarde, acude al tribunal primario para que éste cierre una cuenta existente en la Administración para el Sustento de Menores (ASuMe) y la declare sin deuda, alegando que la deuda reflejada era irreal.
El alimentante, contrario a lo planteado en la Sentencia de este Tribunal, no podía adjudicarse la potestad de de-clarar que su obligación había culminado. Al así hacerlo, el alimentante se arrogó potestades que sólo tienen los tribunales. Si éste entendía que su hijo había culminado su bachillerato y que, por ende, su obligación terminaba, de-bió recurrir al foro judicial para que éste evaluara los mé-ritos de su solicitud. No lo hizo. En cambio, desapareció de la vida de su hijo, quien con la ayuda de su madre y de préstamos estudiantiles, concluyó con éxito una carrera profesional. En el expediente obra evidencia para probar su aprovechamiento académico y aptitud para el estudio; tanto así, que hoy por hoy el alimentista ejerce como abogado.
Este Tribunal no puede, de ninguna manera, contribuir a que los padres se desliguen de sus hijos cuando éstos tienen medios para contribuir a su formación profesional. De igual manera, tampoco puede fomentar que los alimen-tantes se atribuyan potestades de los tribunales a la hora *310 de determinar cuándo cesa su obligación de alimentar. Es por ello que, a diferencia de la mayoría del Tribunal, que entiende que era el alimentista el llamado a recurrir al foro judicial para obtener una extensión de la pensión, soy del criterio de que al alimentante no solicitar relevo de pensión alimentaria, ésta no se extinguió automática-mente. En este sentido, es claro que el principio citado por la mayoría en cuanto a que la pensión se hace innecesaria una vez cesa la necesidad del alimentista, no puede quedar al arbitrio del alimentante.
Conviene aclarar, además, que esta controversia no versa, como plantea la mayoría, sobre quién debía acudir al tribunal a pedir el relevo o la extensión de la pensión alimentaria. Se trata, más bien, de decidir si un alimen-tante puede dar por terminada unilateralmente su obliga-ción de alimentar cuando existe una orden vigente del foro judicial. Soy del criterio de que no.
IV
Por los fundamentos antes expresados, disiento del curso de acción seguido por una mayoría de este Tribunal. En cambio, determinaría que el alimentante debía recurrir al foro judicial mediante una moción de relevo de pensión para que éste determinara si continuaba o no con la obli-gación de proveer alimentos a su hijo mayor de edad mien-tras éste estuviese estudiando. Así, confirmaría el dicta-men del foro intermedio y ordenaría el pago de la cantidad adeudada en concepto de pensión alimentaria.