Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| ENRIQUE SEGURA NIEVES<br><br>Recurrido<br><br>v.<br><br>INÉS PALACIOS TORRECH<br><br>Peticionaria | KLCE202301434 | *Certiorari,* acogido como Apelación, procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Civil núm.:<br>D DI2009-0345<br><br>Sobre: Separación |

Panel integrado por su presidente, el juez Sánchez Ramos, el juez Pagán Ocasio, el juez Marrero Guerrero y la jueza Boria Vizcarrondo.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de enero de 2024.

El Tribunal de Primera Instancia ("TPI"), de forma "provisional", rebajó en aproximadamente un 50% una pensión de excónyuge que las partes había estipulado. Según se explica en detalle a continuación, concluimos que erró el TPI al así actuar pues (i) dicho foro no ha recibido prueba que le permita pasar juicio al respecto y (ii) tampoco surge del récord razón alguna para alterar, en esta etapa, siquiera de forma provisional, la pensión estipulada por las partes.

I.

El Sr. Enrique Segura Nieves (el "Exesposo") y la Sa. Inés Palacios Torrech (la "Exesposa") estuvieron casados por aproximadamente 33 años; se divorciaron en el 2009. La sentencia de divorcio estableció que el Exesposo pagaría a la Exesposa $900 semanales como pensión entre excónyuges.

En el 2011, la Exesposa presentó una demanda sobre liquidación de gananciales contra el Exesposo. Como parte de dicho trámite, en el 2013, las partes estipularon, entre otros asuntos, que el Exesposo continuaría pagando la pensión de $900 semanales. En

mayo de 2013, el TPI dictó Sentencia en la que aprobó los acuerdos entre las partes.

Casi diez años luego, en abril de 2023, el Exesposo presentó una *Moción Solicitando Relevo de Pensión Excónyuge* (la "Moción"). Adujo que su estado de salud y capacidad económica habían cambiado sustancialmente. Alegó que ello le impedía continuar pagando la pensión acordada. En específico, expuso que contaba con 69 años y que padece de condiciones limitantes, tales como alta presión arterial, diabetes mellitus, esofagitis, fibrilación arterial y artritis. También expuso que, en junio de 2022, sufrió un infarto cardiaco y que, desde noviembre de 2022, cesó su práctica profesional de obstetricia. Adujo, además, que las circunstancias de la Exesposa habían cambiado porque recibía una pensión de seguro social y tenía plan médico.

La Exesposa se opuso a la Moción; afirmó que necesita la pensión para su sustento, ya que está próxima a cumplir 70 años y que, por su edad y su falta de destrezas al no haberse desarrollado profesionalmente, no tiene probabilidades de producir ingresos a través del trabajo. La Exesposa explicó que, durante su matrimonio, "se dedicó al cuidado de la familia, la crianza de los cuatro (4) hijos de las partes y el cuidado del [Exesposo] y del hogar". Sostuvo que, mientras tanto, el Exesposo "se dedicó a desarrollar una fructífera, exitosa y prominente carrera profesional médica". Añadió que el Exesposo dejó de pagar el seguro médico antes de que ella cumpliera los 65 años y, una vez cumplió la edad requerida, se acogió al Medicare. Alegó que el Exesposo tenía cuantiosos bienes y continuaba con su lucrativa práctica privada de la medicina, por lo que este continuaba produciendo ingresos significativos.

El 13 de julio, el Exesposo presentó una *Moción en Cumplimiento de Orden y Solicitando Señalamiento de Vista Evidenciaria*; la Exesposa se opuso. El caso fue señalado para vista

evidenciaria el 3 de octubre. Finalizado el descubrimiento de prueba, el 28 de septiembre, las partes presentaron el *Informe Conjunto sobre Conferencia con Antelación al Juicio*. Posteriormente, el TPI, *motu proprio*, dejó sin efecto la vista pautada para el 3 de octubre y la transfirió para el 10 de noviembre.

Mediante una Resolución emitida el 10 de noviembre, notificada el 4 de diciembre (la "Resolución"), el TPI dejó sin efecto la vista pautada para el 10 de noviembre, ello debido al fallecimiento del hermano de una de las abogadas de la Exesposa. Además, a solicitud del Exesposo, el TPI, como "estado provisional de derecho", rebajó la pensión de $900 a $500 semanales, ello "sujeto a los ajustes que sean pertinentes, si alguno, una vez se lleve a cabo el juicio en su fondo". El TPI señaló el juicio para el 25 de enero de 2024.

Inconforme, el 18 de diciembre, la Exesposa presentó el recurso de referencia; señala que el TPI cometió el siguiente error:

> A la peticionaria se le privó del derecho al debido proceso de ley y se le colocó en completo estado de indefensión al erróneamente decretar el Tribunal de Instancia un estado provisional de Derecho en el trámite procesal de la solicitud para el relevo de la pensión excónyuge presentada por el demandante-recurrido el 24 de abril de 2023. El TPI ordenó la rebaja sustancial de la pensión excónyuge acordada por las partes de $900.00 semanales a $500.00 semanales, sin haber celebrado vista, sin haberse presentado prueba y sin que la peticionaria estuviera presente. Aparte de la violación a derechos fundamentales, tal estado provisional de Derecho no está contemplado en el derecho sustantivo ni en el ordenamiento procesal ya que está pendiente la celebración de la vista evidenciaria de la solicitud del demandante-recurrido.

Además, el 19 de diciembre, la Exesposa presentó una *Solicitud de Auxilio de Jurisdicción* en la que solicitó que se suspendieran los efectos de la rebaja "provisional" dictada por el TPI. El Exesposo se opuso. Mediante una *Resolución* emitida el 20 de diciembre, este Tribunal concedió el auxilio solicitado y, así, se paralizaron los efectos de la Resolución; además, se le concedieron

20 días al Exesposo para oponerse al recurso. El 3 de enero, el Exesposo solicitó la reconsideración de esta determinación, lo cual este Tribunal denegó mediante una Resolución emitida el mismo día.

Oportunamente, el Exesposo presentó su oposición al recurso[1]. Planteó que la Exesposa había "empleado tácticas dilatorias que entorpecieron el descubrimiento de prueba", lo cual ha "alargado el tiempo en que [él] se ha visto forzado a continuar pagando una excesiva pensión ... que le es imposible sufragar". Sostuvo que no se había justificado la suspensión del juicio, pautado para el 10 de noviembre, por la muerte del hermano de una de las abogadas de la Exesposa, ello porque esta tenía dos abogadas. Reiteró sus alegaciones en cuanto a sus condiciones de salud. Luego de recibir y escuchar la regrabación de la vista del 10 de noviembre de 2023, resolvemos.[2]

## II.

Los alimentos entre excónyuges están regulados por el Artículo 109 del Código Civil[3], 31 LPRA sec. 385, el cual establece, en lo pertinente, lo siguiente:

> Si decretado el divorcio por cualesquiera de las causales que establece la sec. 321 de este título, cualesquiera de los ex cónyuges no cuenta con suficientes medios para vivir, el Tribunal de Primera Instancia podrá asignarle alimentos discrecionales de los ingresos, rentas, sueldos o bienes que sean de la propiedad del otro cónyuge.

---

[1] El Exesposo solicitó la desestimación del recurso porque, a su juicio, el apéndice del recurso carecía de unos documentos que debieron incluirse. Hemos determinado denegar esta solicitud, pues la norma es clara a los efectos de que la omisión de documentos en el apéndice no necesariamente conlleva la desestimación de un recurso. Véanse, por ejemplo, Reglas 12.1 y 34(E)(2) de nuestro Reglamento, 4 LPRA Ap. XXII-B R. 12.1 y 34(E)(2). En este caso, el expediente ante nosotros, junto con el audio de la vista del 10 de noviembre de 2023, nos permite resolver informadamente.

[2] Se acoge el recurso como una apelación, de conformidad con lo dispuesto en *Figueroa v. Del Rosario*, 147 DPR 121 (1998); por conveniencia administrativa, se mantiene el alfanumérico asignado inicialmente al caso.

[3] Vigente a la fecha en que las partes estipularon la pensión excónyuge.

Al establecer si procede imponer una pensión de excónyuge y la cuantía de esta, el tribunal debe llevar a cabo una evaluación a la luz de los ocho factores dispuestos en el Artículo 109 del Código Civil, *supra*.[4] Las pensiones alimentarias de excónyuges están investidas del mayor interés público. *Cortés Pagán v. González Colón*, 184 DPR 807, 814 (2012). Los "dictámenes sobre pensiones alimentarias de excónyuges siempre están sujetos a modificación, según cambie sustancialmente la capacidad del alimentante para proveer alimentos o la necesidad del alimentista". *Íd*.; *Cantellops v. Cautiño*, 146 DPR 791, 806 (1998). En ese sentido, el Código Civil establece lo siguiente:

> Fijada la pensión alimenticia, el juez podrá modificarla por alteraciones sustanciales en la situación, los ingresos y la fortuna de uno u otro ex cónyuge. La pensión será revocada mediante resolución judicial si llegase a hacerse innecesaria, o por contraer el cónyuge divorciado acreedor a la pensión nuevo matrimonio o viviese en público concubinato.

Las estipulaciones sobre una pensión alimentaria tienen la naturaleza de un contrato de transacción judicial que obliga a las partes. *Nater v. Ramos*, 162 DPR 616, 627 (2004); *Igaravidez v. Ricci*, 147 DPR 1, 5(1998); *Ex parte Negrón Rivera y Bonilla*, 120 DPR 61, 76 (1987); *Magee v. Alberro*, 126 DPR 228, 232-233 (1990). Como norma general, el TPI aceptará estos convenios y estipulaciones, los cuales tendrán el efecto de cosa juzgada entre las partes. *Magee v. Alberro*, 126 DPR a la pág. 232.

Sin embargo, "no procede aplicar una regla absoluta de no modificar las pensiones estipuladas debido a que se trató de un contrato de transacción". *Íd*., a la pág. 233. En lo que se refiere a las

---

[4] Los referidos criterios son los siguientes:
(a) Los acuerdos a que hubiesen llegado los ex- cónyuges; (b) la edad y el estado de salud; (c) la cualificación profesional y las probabilidades de acceso a un empleo; (d) la dedicación pasada y futura a la familia; (e) la colaboración con su trabajo en las actividades mercantiles, industriales o profesionales del otro cónyuge; (f) la duración del matrimonio y de la convivencia conyugal; (g) el caudal y medios económicos y las necesidades de uno y otro cónyuge; (h) cualquier otro factor que considere apropiado dentro de las circunstancias del caso. Véase, además, *Díaz v. Alcalá*, 140 DPR 959, 977-978 (1996).

pensiones estipuladas, "la doctrina ha establecido que la alteración del convenio o estipulación sobre pensión alimenticia en ocasión de un divorcio procederá solamente cuando exista un cambio sustancial en las circunstancias que dieron lugar u originaron el mismo. No basta cualquier cambio en las circunstancias, tiene que ser uno sustancial." *Íd.*; *Ex Parte Negrón,*120 DPR 61 (1987). En fin, "[p]ara que proceda un cambio en la pensión estipulada[,] el peticionario tendría que probar que las circunstancias al momento de efectuarse la estipulación han cambiado de forma sustancial". *Íd.*

III.

Concluimos que erró el TPI al rebajar, de forma provisional, la pensión alimentaria entre las partes. Veamos.

Nada en el récord de este caso justificaba que el TPI se apartara de la norma general de aguardar a recibir y evaluar la prueba pertinente antes de tomar una determinación sobre la solicitud de rebaja de pensión. Aun partiendo de la premisa, sin resolverlo, por resultar innecesario aquí, de que el TPI podría, de conformidad con determinadas circunstancias excepcionales, rebajar una pensión de forma "provisional", sin haber recibido prueba sobre un potencial cambio sustancial en las circunstancias de las partes, en este caso no se configuró situación alguna que pudiese sustentar este proceder.

Adviértase que, aunque el Exesposo ha alegado que ha ocurrido un cambio sustancial en su capacidad económica, la realidad es que este no ha negado la alegación de la Exesposa a los efectos de que continúa practicando la medicina (ginecología, si bien no obstetricia). El Exesposo, a pesar de referirse a un número de supuestas situaciones de salud, no ha alegado encontrarse incapacitado para trabajar y generar ingresos; tampoco ha negado

la alegación de la Exesposa en cuanto a los bienes económicos bajo su control.

Por tanto, de su faz, el TPI no tenía ante sí una situación excepcional que justificase rebajar la pensión de forma "provisional", antes de haber recibido prueba alguna. Oportunamente, el Exesposo tendrá la oportunidad de probar que ha ocurrido un cambio sustancial en sus circunstancias que pudiese ameritar una rebaja a la pensión vigente. Sin embargo, las alegaciones de las partes en este caso no eran suficientes para alterar, ni aun provisionalmente, la pensión estipulada por las partes.

Por otra parte, y contrario a lo que sugiere el Exesposo, aun si pudiese concluirse (sin resolverlo, por resultar innecesario) que, de algún modo, la Exesposa ha intentado dilatar injustificadamente el trámite del caso, ello no justificaría lo actuado por el TPI. En tal caso, el TPI tiene otras formas de manejar la situación, por ejemplo, estableciendo un calendario más acelerado o imponiendo sanciones económicas.

En fin, erró el TPI al tomar una determinación que implicó una reducción sustancial de la pensión excónyuge, sin antes haber celebrado una vista evidenciaria que le permitiera aquilitar las alegaciones de las partes. Resaltamos que, al así resolver, no estamos pasando, ni adelantando, juicio sobre si, luego de que se reciba prueba al respecto, procedería algún tipo de rebaja a la pensión en disputa.

IV.

Por los fundamentos antes expuestos, se revoca la Resolución recurrida y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de forma compatible con lo aquí resuelto. Al amparo de la Regla 18 (A) de nuestro Reglamento,[5]

---

[5] Regla 18- Efecto de la Presentación del escrito de apelaciones en casos civiles.

**el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin que tenga que esperar por nuestro mandato**.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

(A) Suspensión.--Una vez presentado el escrito de apelación, se suspenderán todos los procedimientos en el Tribunal de Primera Instancia respecto a la sentencia, o parte de la misma, de la cual se apela, o a las cuestiones comprendidas en ella, **salvo orden en contrario, expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones**; pero el Tribunal de Primera Instancia podrá proseguir el pleito en cuanto a cualquier cuestión no comprendida en la apelación. ... 4 LPRA Ap. XXII-B, R. 18(A) (énfasis suplido).