# 2003 DTA 104

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL V DE PONCE Y AIBONITO**

MARGIE DE JESUS VAZQUEZ
Apelada

RECEIVED
OCT 0 8 2003
SERIALS DEPT.
HARVARD LAW SCHOOL LIBRARY

v.

ADRIAN ACEVEDO COLON E ILEANA RIVERA FIGUEROA Y LA SOCIEDAD LEGAL DE
GANANCIALES POR ELLOS CONSTITUIDA
Apelantes

Núm. KLAN-01-01184

San Juan, Puerto Rico, a 13 de junio de 2003

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Aponte Hernández y la Juez Pabón Charneco

Aponte Hernández, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La parte apelante, el señor Adrián Acevedo Colón, la señora Ileana Rivera Figueroa y la Sociedad Legal de Gananciales constituida por ellos, nos solicitan la revocación de la sentencia emitida el 14 de septiembre de 2001 por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante la misma, dicho foro declaró con lugar la demanda sobre ejecución de hipoteca presentada por la señora Margie De Jesús Vázquez, ordenando así la venta en pública subasta de la propiedad ofrecida en garantía.

Por los fundamentos expresados a continuación, revocamos la sentencia apelada.

### I

La parte apelada, señora Margie De Jesús Vázquez (señora De Jesús), era dueña de una propiedad inmueble localizada en la Calle Cristina en Ponce. Sobre la misma, en unión al señor Tomás Torres Ortiz (señor Torres), ▪ constituyó una hipoteca por $160,000 a favor de Doral Mortgage Corporation (Doral). Posteriormente, al enterarse de que la parte apelante, señor Adrián Acevedo Colón y su esposa Ileana Rivera Figueroa (esposos Acevedo-Rivera), estaban buscando un local para establecer un centro de envejecientes y una oficina de médicos, la señora De Jesús y el señor Torres visitaron a dichos esposos Acevedo-Rivera y les ofrecieron en venta la propiedad antes identificada. Luego de varias conversaciones pactaron la compraventa en $200,000 de los cuales $160,000 eran para saldar la hipoteca antes referida y los restantes $40,000 serían pagaderos a la señora De Jesús.

A los fines de formalizar la compraventa, el 19 de agosto de 1996, las partes suscribieron los siguientes documentos notariales: (1) Escritura Pública núm. 20, otorgada por ambas partes ante el Notario José Manuel Pizarro Rodríguez; ▪ (2) Escritura Pública núm. 21 (sobre "*Hipoteca en Garantía de Pagaré al Portador*"), otorgada por la parte apelante ante el Notario José Manuel Pizarro Rodríguez; (3) documento de Pagaré por $40,000 (a ser garantizado con hipoteca voluntaria), otorgado por la parte apelante bajo affidávit núm. 356 del Notario José Manuel Pizarro Rodríguez; y (4) Contrato de Opción de Compra otorgado por ambas partes bajo affidávit núm. 311 del Notario Carlos D. Bonaparte Torrent.

El 8 de diciembre de 1997, la señora De Jesús presentó demanda de ejecución de pagaré hipotecario contra el señor Adrián Acevedo Colón, la señora Ileana Rivera Figueroa y la Sociedad Legal de Bienes Gananciales compuesta por ambos. Alegó que era la tenedora del pagaré por $40,000 otorgado por los apelantes, garantizado por la hipoteca constituida mediante escritura núm. 21, *supra*; que de dicha suma aún se le adeudaba la cantidad de $23,500, deuda que era líquida y exigible, y que a pesar de haber requerido su pago a los esposos Acevedo-Rivera, éstos no habían saldado dicho balance.

En su contestación a la demanda, los esposos Acevedo-Rivera aceptaron haber otorgado la escritura de hipoteca núm. 21, *supra*, pero negaron que la señora De Jesús les hubiese entregado los $40,000 a ser garantizados mediante dicha escritura. Además, alegaron que el gravamen no figuraba inscrito en el Registro de la Propiedad, porque habían acordado no presentar para inscripción dicha escritura hasta que la parte apelada les entregara el dinero.

De otra parte, el 24 de febrero de 1998, Doral presentó demanda de ejecución de hipoteca ▪ contra Margie De Jesús Vázquez, la aquí apelada, por incumplimiento con los términos de la hipoteca que ésta había constituido a su favor sobre la antes referida propiedad, ▪ previo a venderle la misma a los esposos Acevedo-Rivera.

Entre varios trámites procesales, el 4 de mayo de 1998, los esposos Acevedo-Rivera solicitaron la consolidación del caso de epígrafe (JCD97-1404) con el caso presentado por Doral (JCD98-0226). Dicha solicitud fue declarada No Ha Lugar por el Tribunal de Primera Instancia. También presentaron "*Demanda*

*Contra Tercero"* contra el señor Tomas Torres Ortiz, en la que alegaron, en síntesis, que sufrieron angustias mentales y emocionales y pérdidas económicas a consecuencia de la negligencia del señor Torres quien supuestamente se comprometió, conjuntamente con la señora De Jesús, a gestionar el financiamiento para la compra de la propiedad en cuestión y no cumplió con lo acordado. ■

Así las cosas, el Tribunal de Primera Instancia celebró la vista en su fondo los días 16 de febrero de 2000 y 5, 11 y 18 de junio de 2001. Finalmente, emitió la sentencia recurrida el 14 de septiembre de 2001.

Los esposos Acevedo-Rivera solicitaron determinación de hechos adicionales y el Tribunal de Primera Instancia, mediante resolución de 17 de octubre de 2001, dispuso de dicha solicitud como sigue:

*"No Ha Lugar. Los hechos recogidos en la sentencia son los que el tribunal estimó necesarios para emitir la misma."*

Inconforme con la sentencia emitida, los esposos Acevedo-Rivera recurrieron oportunamente ante nos señalando:

*"Cometió grave error de derecho el Tribunal de Instancia en su apreciación de la prueba al determinar que la parte demandada-apelante le adeudaba a la parte demandante-apelada, la suma de $15,781.54 y no considerar las circunstancias particulares que motivaron el otorgamiento del pagaré que motivó la demanda en el caso de autos.*

*Erró el Tribunal de Primera Instancia en su apreciación de la prueba y determinar que los pagos realizados por los demandados-apelantes eran para abonar a la alegada deuda con la parte demandante-apelada, cuando lo cierto es que dichos pagos eran para abonar a la hipoteca que gravaba la propiedad a favor de Doral Mortgage Corporation y que la parte demandante-apelada recibía y no hacía dichos pagos al acreedor hipotecario.*

*Erró el Tribunal de Instancia en su apreciación de los hechos y aplicación del derecho, al declarar con lugar la demanda y ordenar la venta en pública subasta de la propiedad para el pago de la "alegada" deuda con la parte demandante-apelada, cuando de la prueba surge que la propiedad que motivó dicho pagaré fue objeto de un proceso de ejecución donde la parte demandante-apelada la entregó al acreedor hipotecario Doral Mortgage en cesión de derechos."*

Contando con la comparecencia de ambas partes, resolvemos.

**II**

Todos los señalamientos de error cuestionan la apreciación de la prueba por el Tribunal de Primera Instancia y están estrechamente relacionados entre sí, por lo que los discutiremos conjuntamente.

La Regla 43.2 de Procedimiento Civil, 32 L.P.R.A. Ap. II, R. 43.2, dispone el alcance de la revisión judicial sobre cuestiones de hecho y sobre la apreciación de la prueba desfilada ante el Tribunal de Instancia como sigue:

*"En todo pleito, el tribunal especificará los hechos probados y separadamente consignará sus conclusiones de derecho y ordenará que se registre la sentencia que corresponda[.] [ ] Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos."*

Por su parte, el Tribunal Supremo ha resuelto que *"[c]orresponde al tribunal sentenciador aquilatar la*

*prueba testifical ofrecida y dirimir su credibilidad. En razón de ello, repetidamente hemos establecido que en asuntos de credibilidad de la prueba concederemos gran deferencia a las determinaciones de hechos efectuadas por los tribunales de instancia." Trinidad v. Chade,* 153 D.P.R.\_\_, **2001 J.T.S. 10**, 793. En ausencia de error, pasión, prejuicio y parcialidad, la apreciación de la prueba hecha por el Tribunal de Primera Instancia no debe ser cuestionada, pues el foro apelativo no puede prescindir de y permutar por sus propias apreciaciones las determinaciones tajantes y ponderadas del foro de Instancia. Es así, pues estas decisiones estarían basadas únicamente en un examen del expediente del caso. Véase *Argüello López v. Argüello García,* 155 D.P.R. \_\_, **2001 J.T.S. 127**, 94; *Rolón v. Charlie Car Rental, Inc.,* 148 D.P.R. 420, 433 (1999) (citando a *López Vicil, infra); López Vicil v. ITT Intermedia Inc.,* 142 D.P.R. 857, 864 (1997).

En fin, es precisamente el Tribunal de Instancia el que tiene la oportunidad de escuchar y ver declarar a los testigos y apreciar su comportamiento o *"demeanor",* por lo que está en mejor posición de aquilatar la prueba testifical presentada. Véase *Argüello López v. Argüello García, supra; Flores Santiago v. Sociedad de Gananciales,* 146 D.P.R. 45 (1998) (citando a *López Vicil, supra); Monllor Arzola v. Sociedad Legal de Gananciales,* 138 D.P.R. 600, 610 (1995). Por consiguiente, no habiendo pasión, prejuicio, parcialidad o error manifiesto y estando el Tribunal de Instancia en mejor posición que este foro para dirimir la prueba, sus determinaciones deben prevalecer *"a menos que la apreciación de la evidencia se aleje de la realidad fáctica o la prueba sea inherentemente imposible o increíble". Pueblo v. Maisonave Rodríguez,* 129 D.P.R. 49, 63 (1991).

Durante la revisión, este foro sólo cuenta con expedientes mudos e inexpresivos imponiéndole, como resultado, un mayor respeto a la aquilatación de credibilidad del foro primario. Véase *Trinidad v. Chade, supra* (citando a *Pérez Cruz, infra); Pérez Cruz v. Hospital La Concepción,* 115 D.P.R. 721, 728 (1984) (citando a *López v. Hosp. Presbiteriano, Inc.,* 107 D.P.R. 197, 225 (1978) (Irizarry Yunqué, C., disidente)). Es por ello que la regla general que impera en nuestro ordenamiento es concederle gran deferencia a la apreciación imparcial de la prueba hecha en Instancia. Véase *Pueblo v. Maisonave Rodríguez, supra,* 62-63. Como bien señala nuestro Tribunal Supremo, hacer *"[l]o contrario, esto es, la intervención indiscriminada con la adjudicación de credibilidad que se realiza a nivel de instancia, significaría el caos y la destrucción del sistema judicial existente en nuestra jurisdicción." Pueblo v. Cabán Torres,* 117 D.P.R. 645, 648 (1986).

Sin embargo, aunque, de ordinario, el foro apelativo no interviene con la apreciación de la prueba que hacen los tribunales de instancia, sí lo hace cuando un balance racional, justiciero y jurídico de la totalidad de la prueba y de los documentos que obran en autos lleva a conclusiones distintas a las del tribunal de instancia. *Negrón Rivera y Bonilla, Ex parte,* 120 D.P.R. 61 (1987).

De otra parte, el Art. 188 de la Ley Hipotecaria de 1979, 30 L.P.R.A. sec. 2607, dispone que *"[p]ara que las hipotecas voluntarias queden válidamente constituidas se requiere... [q]ue se hayan acordado en escritura pública"* y *"[q]ue la escritura se haya inscrito en el Registro de la Propiedad."*

## III

En el presente caso, quedan por contestar una serie de interrogantes que nos mueven a apartarnos de la apreciación de la prueba realizada por el Tribunal de Primera Instancia. Dicho foro concluyó, de entrada, que la controversia giraba en torno al incumplimiento con una hipoteca válidamente constituida, por lo que excluyó de su análisis hechos no controvertidos y prueba material que ponen en duda la validez de la referida hipoteca y la legitimidad de la deuda que pretendía garantizar. Según lo expresó el propio foro de Instancia al disponer de la solicitud de determinaciones adicionales presentadas por la parte apelante, *"[l]os hechos recogidos en la sentencia son los que el tribunal estimó necesarios para emitir la misma".* Al así determinar, el Tribunal de Primera Instancia no tuvo presente que cuando de hacer justicia se trata, ... no hay moldes técnicos que limiten o aprisionen los remedios justos. *Negrón Rivera y Bonilla, Ex parte, supra.*

Sin embargo, surge de la prueba desfilada que la controversia es mucho más compleja que una, exclusivamente, de ejecución de hipoteca. Lo expresado en los documentos notariales no recoge fielmente los acuerdos entre las partes. La propia señora De Jesús declaró en la vista en su fondo, ██ que en la escritura de compraventa ██ ella aceptó haber recibido los $40,000 de diferencia entre el balance de la hipoteca de Doral y el precio de compraventa. Pero de inmediato se otorgó la Escritura núm. 21, *supra*, diz que para garantizar el pago de esos mismos $40,000 por alegadamente haber quedado aplazados. ¿Cuál actuación se ajusta a la verdad? Pero ahí no terminan las contradicciones. Luego de otorgadas las referidas escrituras, las partes se mueven a otro estudio notarial y otorgan, en esa misma fecha, un "*Contrato de Opción de Compra*" ██ mediante el cual la señora De Jesús se comprometió a venderle a los esposos Acevedo-Rivera, en un término de seis (6) meses, la misma propiedad que ya, alegadamente, les había vendido y que éstos habían ofrecido en garantía de los $40,000 alegadamente aplazados. La cláusula SEXTA del referido contrato establece como sigue:

"*Vencido el referido término, cesará toda obligación de la parte Vendedora frente a la Compradora de traspasar esta propiedad. Durante dicho término, la parte Vendedora no podrá en forma alguna vender, hipotecar, enajenar, gravar, ceder o transferir en forma alguna la propiedad objeto de este contrato, cuyos términos obligan a ambas partes, sus herederos, sucesores o cesionarios.*"

Es evidente que una de las dos alegadas transacciones -la compraventa e hipoteca o la opción de compra-, a todas luces contradictorias entre sí, fue un acto simulado y, por consiguiente, nulo.

Las propias declaraciones de la señora De Jesús sugieren que no hubo tal compraventa. Ella declaró en la vista en su fondo que "*como parte del acuerdo de la compraventa, la parte demandada continuaría pagando la hipoteca que tenía la propiedad o gravaba la propiedad, a partir de septiembre de 1996, hasta que la parte demandada lograra refinanciar u obtener un préstamo para comprar la propiedad.*"[9] (Énfasis suplido) Esas declaraciones tienden a sugerir que la propiedad inmueble objeto de la controversia no pasó al patrimonio de la parte apelante el 19 de agosto de 1996, cuando se otorgaron las escrituras de compraventa y de hipoteca. Además, la declaración de la señora De Jesús de que **ella le entregó la propiedad a Doral** cuando dicha entidad bancaria procedió a ejecutar la hipoteca de $160,000 constituida a su favor, apunta a que la señora De Jesús aún conservaba la titularidad de la propiedad.

En cuanto a los pagos realizados por los esposos Acevedo-Rivera, éstos alegan que a petición de la señora De Jesús le entregaron $16,500 como adelanto a los $40,000 que tendrían que entregarle si se completaba la transacción, ya que ella los necesitaba para una situación que se le había presentado. Pero que todos los demás pagos que entregaron a la señora De Jesús eran para que, según acordado, ella los entregara a Doral para abonar a su hipoteca. La señora De Jesús retuvo seis (6) de dichos pagos, cuyos cheques estaban librados a su nombre, y los acreditó a los $40,000: cuatro fueron librados por la cantidad de $1,294 cada uno; otro por $1,200 y el restante por $1,342.46. Además, los esposos Acevedo-Rivera libraron dos (2) cheques adicionales a favor de Doral: uno por $1,346 y el otro por $1,342.46.

Contrario a lo alegado por los esposos Acevedo-Rivera, la señora De Jesús alegó, y así determinó el Tribunal de Primera Instancia, que los cheques librados a favor de ella eran para abonar a la alegada deuda de $40,000. Pero al examinar las fechas y cantidades de los referidos ocho (8) cheques se observa un patrón de pago mensual con un leve aumento gradual que coincide con el pago mensual correspondiente a la hipoteca de Doral. Ello unido a lo declarado por la señora De Jesús de que como parte del acuerdo los esposos continuarían pagando la hipoteca, de Doral en lo que conseguían financiamiento para comprar la propiedad, refuerza la alegación de los esposos Acevedo-Rivera en cuanto al propósito de dichos pagos. A cambio del pago mensual de la hipoteca los esposos Acevedo-Rivera procederían, como así lo hicieron, a reparar y utilizar la propiedad. Es decir, cada pago equivalía al canon mensual de arrendamiento por el uso de la propiedad. Por el contrario, la cantidad de los pagos mensuales estipulados en el documento de "*Pagaré*" y la escritura de hipoteca otorgados

el 19 de agosto de 1996 a favor del portador, cuya ejecución es objeto de la causa de epígrafe, no guardan relación alguna con los pagos a Doral: cinco (5) pagos eran por la cantidad de $6,666 y un (1) pago final de $6,670. Existe una marcada diferencia entre unos y otros pagos, por lo que la versión de los esposos Acevedo-Rivera en cuanto al propósito de los referidos pagos parece más lógica y creíble que la de la señora De Jesús.

Por otro lado, las alegaciones de la señora De Jesús en su demanda de ejecución de hipoteca, en el sentido de que la hipoteca por $40,000 estaba válidamente constituida y tenía un balance vencido pendiente de pago, quedó impugnada por su propia actuación al entregarle la propiedad a Doral en pago por el balance de la hipoteca por $160,000 que ella había constituido a favor de dicha entidad hipotecaria. Es totalmente incompatible haber vendido la propiedad a los esposos Acevedo-Rivera y aún conservar la facultad de disponer de la misma. También resulta determinante que las escrituras de compraventa y de hipoteca nunca fueron presentadas en el Registro de la Propiedad. Así se desprende de la demanda presentada por la señora De Jesús y de la sentencia emitida por el Tribunal de Primera Instancia, en las que, aunque se ofrecen los datos de inscripción de la propiedad inmueble en cuestión, no se ofrecen los datos de inscripción de la hipoteca ni constancia de que la escritura que la constituye hubiese sido presentada para su inscripción en el Registro de la Propiedad.

Es evidente que no estamos ante una hipoteca válidamente constituida, porque la escritura de hipoteca -escritura núm. 21, *supra*- no fue presentada en el Registro de la Propiedad. Art. 188 de la Ley Hipotecaria, *supra*. Pero además, porque las facultades de los esposos Acevedo-Rivera para otorgar la referida escritura quedó impugnada por las actuaciones de la señora De Jesús al entregar la propiedad a Doral. Ello constituyó un acto de dominio incompatible con su alegación de que había vendido la propiedad a los esposos Acevedo-Rivera. Por lo tanto, no puede haber balance pendiente de pago en relación a una compraventa que aparentemente nunca fue consumada, ni puede haber hipoteca para garantizar el alegado balance de una compraventa inexistente. Se cometieron los errores señalados y la sentencia debe ser revocada.

## IV

Por los fundamentos antes expuestos, revocamos la sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

## ESCOLIOS 2003 DTA 104

**1.** De acuerdo al testimonio de la señora De Jesús, según expresado en la exposición narrativa aprobada por el Tribunal de Primera Instancia, el señor Tomás Torres Ortiz era su compañero consensual.

**2.** Esta escritura no fue incluida en el apéndice del recurso. Aparece mencionada en la Escritura núm. 21, sobre Hipoteca en Garantía de Pagaré al Portador, otorgada el 19 de agosto de 1996 ante el Notario José Manuel Pizarro Rodríguez, como la escritura mediante la cual la parte apelante adquirió la propiedad a ser hipotecada.

**3.** Caso Civil Núm. JCD98-0226 ante el Tribunal de Primera Instancia, Sala Superior de Ponce.

**4.** Según la demanda presentada por Doral Mortgage Corporation, la hipoteca fue constituida en garantía de un pagaré por la suma de $150,000. En el recurso y en la exposición narrativa se indica que fue por la cantidad de $160,000.

**5.** No surge del recurso cuál fue la disposición de la Demanda Contra Tercero. Aparentemente, Torres no fue emplazado por alegadamente encontrarse fuera de Puerto Rico.

**6.** Exposición Narrativa, a la pág. 6.

**7.** Escritura núm. 20, otorgada el 19 de agosto de 1996, ante el Notario José Manuel Pizarro Rodríguez.

**8.** "*Contrato de Opción de Compra*" otorgado en Ponce, Puerto Rico, el 19 de agosto de 1996, bajo affidávit núm. 311, del Notario Carlos D. Bonaparte Torrent.

**9.** Exposición Narrativa, a la pág. 4.