Opinión disidente emitida por la
Juez Asociada Señora Rodríguez Rodríguez.
Expedimos el auto de certiorari en el caso de epígrafe para revisar la revocación de una sentencia que desestimó sumariamente cierta demanda sobre conducta desleal relacionada con un arrendamiento. Creemos que procedía confirmar la sentencia del foro primario, razón por la cual disentimos de la determinación que hoy toma este Tribunal.
I
Allá para 1953, los esposos Jorge Ortiz Toro y Rita Brunet Calaf arrendaron a El Mundo Broadcasting Corporation (EMB) una finca de aproximadamente cinco cuerdas ubicada en el Barrio Sonadora de Aguas Buenas, Puerto Rico. Se pactó un canon de $150 mensuales y un término de 50 años, prorrogable por 49 años a discreción del arrendatario. No hubo prohibición de subarrendamiento, y las partes contemplaron la posibilidad de que el arrendatario ejecutara mejoras o edificaciones, tanto muebles como inmuebles. El contrato se inscribió en el Registro de la Propiedad y entró en vigor el 1 de julio de 1953. Lease Agreement, Apéndice de la Petición de certiorari (Apéndice), págs. 41-47.
El 11 de octubre de 1994, los sucesores de Ortiz Toro y Brunet Calaf(1) otorgaron con EMB una escritura de ratificación y enmiendas al susodicho arrendamiento. La única *348 modificación pertinente fue el establecimiento de un nuevo canon mensual. Éste comenzaría en $691.40 y aumentaría 10% cada diez años. Cabe señalar que al menos uno de los sucesores otorgantes era un reconocido abogado quien estuvo a cargo de las negociaciones. Deed of Ratification and Amendment of Lease Agreement, Apéndice, págs. 48-52; Contestación a Interrogatorio, Apéndice, págs. 154-172.(2)
Así las cosas, EMB notificó a los arrendadores su determinación de prorrogar el arrendamiento mediante una carta de 15 de noviembre de 2002. Apéndice, págs. 53-61.
Los peticionarios instaron su Demanda el 3 de julio de 2003.(3) Principalmente alegaron lo siguiente: que EMB, además de tener su torre de transmisión radial en la finca, había subarrendado parte de ésta y permitido la instalación de otras torres; que los cánones de subarrendamiento excedían por mucho los del arrendamiento; que EMB ocultó esos hechos al negociarse la ratificación y enmiendas de 1994; que debido a ello, los demandantes carecieron del conocimiento necesario para negociar adecuadamente, y que EMB había desatendido sus intentos extrajudiciales de resolver la situación. Amparándose en el principio de la buena fe, los demandantes solicitaron la “cancelación” del contrato e indemnización de sus daños, o la renegociación del canon arrendaticio con miras al beneficio que EMB derivaba de los subarrendamientos.(4) Apéndice, págs. 30-32.
Al cabo de varios sucesos procesales, el Tribunal de Pri *349 mera Instancia desestimó sumariamente la demanda. Estimó dicho foro que la pregunta a dirimir era si EMB incurrió en mala fe durante la renegociación del contrato.(5) Concluyó al respecto que los demandantes no señalaron los hechos constitutivos de mala fe, no hicieron las indagaciones necesarias antes de otorgar la escritura de 1994 ni fueron inducidos a error por EMB. Apoyó su análisis con una estipulación que vale la pena reproducir: “[E]n o antes del 15 de noviembre de 2002 ... ningún miembro de la Sucesión demandante se interesó en saber si el predio arrendado por [EMB] había sido subarrendado.” Sentencia, Apéndice, pág. 322. Por último, el foro de instancia concluyó que era innecesario descubrir y pasar prueba sobre los cánones subarrendaticios, pues “Q]a norma jurídica que rige el caso de autos permanece inalterada indistintamente del beneficio económico que [EMB] reciba por el subarriendo del predio de marras”. íd., pág. 323.
El Tribunal de Apelaciones revocó dicha sentencia ante la oportuna apelación de los demandantes. Resolvió, en primer lugar, que existía una clara controversia de hechos y de derecho. Citamos extensamente su explicación:
Los apelantes ... sostienen que, aún [sic] cuando no había en el contrato una prohibición de subarrendar, [EMB], en su deber de actuar de buena fe, debió informar a la Sucesión (los apelantes) de estos subarriendos de manera que ellos hubieren podido estar informados y en una mejor posición para determinar cual [sic] era el cánon [sic] de arrendamiento más justo y razonable para las partes. ...
... Añaden los apelantes que estamos ante un contrato de larga duración y esto justifica que se tenga la información del monto de los subarrendamientos para determinar si estos [sic] guardan proporción con lo que [EMB] les paga. ...
Los apelantes están alegando una falta de buena fe de parte [de EMB] al omitir información que debió haber provisto *350 cuando se estaba negociando la ratificación y enmiendas del contrato original de arrendamiento, en el año 1994. Información que tampoco puso en conocimiento de éstos al ejercer su opción en el año 2002. ...
Los apelantes están solicitando la intervención del tribunal para que atempere la irracionalidad de la causa por haberse lesionado el principio de la reciprocidad de las prestaciones y la buena fe. Que el tribunal determine si en adición a lo ex-presamente pactado, la buena fe creó en éste [sic] caso unos deberes especiales de conducta exigibles de acuerdo a la naturaleza de la relación jurídica y la finalidad perseguida entre las partes. Resolución del Tribunal de Apelaciones, Apéndice, págs. 371-373.
En segundo lugar, el foro a quo determinó que no hubo un descubrimiento de prueba adecuado. Específicamente, “el [Tribunal de Primera Instancia] permitió un descubrimiento dirigido y limitado que no permitió a los apelantes descubrir prueba que estaba en controversia o cuya pertinencia se adjudicó desde muy temprano en los procedimientos”. Resolución del Tribunal de Apelaciones, Apéndice, pág. 374.
EMB instó oportunamente el recurso de epígrafe para que revisáramos el dictamen apelativo.(6) Al cabo de varios trámites procesales,(7) expedimos el auto y recibimos la comparecencia de cada parte. Por las razones que se discu *351 ten a continuación, creemos que la determinación del foro primario era la correcta.
II
La buena fe es un principio medular en nuestro derecho de contratos.(8) Sus dictámenes vinculan a las partes durante las relaciones precontractuales, afectan la interpretación de los contratos, regulan su cumplimiento y permiten su modificación.(9) Véanse: J.L. De los Mozos, El principio de la buena fe: sus aplicaciones prácticas en el Derecho Civil español, Barcelona, Ed. Bosch, 1965, págs. 179-183 y 222-228; J. Mosset Iturraspe, Interpretación Económica de los Contratos, Buenos Aires, Rubinzal-Culzoni Editores, 1994, Cap. IV. La buena fe es una fuente que produce “ ‘especiales deberes de conducta exigibles en cada caso, de acuerdo con la naturaleza de la relación jurídica y con la finalidad perseguida por las partes a través de ella’ ”. Arthur Young & Co. v. Vega III, 136 D.P.R. 157, 170-171 (1994), citando a M.J. Godreau Robles, Lealtad y Buena Fe Contractual, LVII (Núm. 3) Rev. Jur. U.P.R. 367, *352 379 (1989). Véase, también, L. Diez-Picazo, Prólogo, en Wieacker, El principio general de la buena fe, Madrid, Ed. Civitas, 1982, pág. 19.
A. El principio de la buena fe vincula a las partes durante la preparación de un contrato. Ejemplo de ello es la doctrina pautada en Prods. Tommy Muñiz v. COPAN, 113 D.P.R. 517 (1982), y su progenie sobre la ruptura injustificada del trato precontractual. Véase, además, H.U.C.E. de Ame. v. V. & E. Eng. Const., 115 D.P.R. 711, 716 (1984). Empero, téngase presente que la buena fe precontractual no ha de evaluarse en abstracción de otras figuras jurídicas pertinentes. En Prods. Tommy Muñiz, supra, págs. 529-530, expresamos que
... la amplia gama de supuestos sobre los que puede asentarse la responsabilidad precontractual hace necesario que en el análisis del problema se considere qué figura jurídica —culpa, dolo, fraude, buena fe, abuso del derecho u otros principios generales del derecho— responde más adecuadamente como fundamento jurídico para la solución del caso.
Uno de los supuestos de mala fe precontractual se configura cuando el silencio de una parte vicia el consentimiento de la otra. Dicho supuesto lo examinamos en Márquez v. Torres Campos, 111 D.P.R. 854 (1982). También véase Bosques v. Echevarría, 162 D.P.R. 830,836 (2004) (“constituye dolo el callar sobre una circunstancia importante respecto al objeto del contrato”).
El caso Márquez v. Torres Campos, supra, surgió a raíz de una compraventa bovina. Márquez venía desarrollando un negocio de crianza de ganado a pequeña escala, durante casi cinco años, y compró 25 novillos a Torres Campos. Éste había sustraído el ganado de un hato bajo cuarentena por tuberculosis, sin la debida autorización. Márquez desconocía los procedimientos de cuarentena y Torres Campos *353 nunca reveló el problema.(10) Infectadas sus reses y otros animales, Márquez demandó a Torres Campos por los daños derivados de su dolo o negligencia. Al confirmar la sentencia condenatoria, señalamos que el dolo consistió en “callar voluntaria y conscientemente respecto a la condición de contagio del ganado ...”. íd., pág. 871. Luego explicamos que “[l]a doctrina acepta que el callar sobre una circunstancia tan importante como la aquí presente, constituye dolo”. íd., esc. 18.
Ubicado el silencio precontractual bajo la figura del dolo, es preciso examinar las circunstancias generalmente constitutivas de ésta. Incurre en dolo quien actúa con la voluntad consciente de producir un acto injusto, es decir, contrario a la honestidad e idóneo para sorprender la buena fe ajena. Tal figura exige un análisis atento a las circunstancias peculiares de cada caso, entre ellas la educación, experiencia y condición socio-económica de las partes. Colón v. Promo Motor Imports, Inc., 144 D.P.R. 659, 666 y 669 (1997).
Puede colegirse que son al menos cuatro los factores relevantes al determinar si procede anular o alterar un contrato debido a que una de las partes conocía y no divulgó determinado hecho. Debemos considerar la importancia objetiva y subjetiva de la información omitida, las posibilidades que tuvo el perjudicado de descubrirla, las características evidentes de ambas partes, así como la naturaleza y finalidad de la relación jurídica entre ellas. En el caso reseñado Márquez v. Torres Campos, por ejemplo, el perju *354 dicado no era perito, el vicio no era evidente y éste era muy importante para el perjudicado y para terceros.
Este análisis debe efectuarse reconociendo que entre las partes contratantes ha de existir, necesariamente, intereses contrapuestos y que cada cual, en una economía de libre competencia, lo que interesa es adelantar los suyos. En cuyo caso, la exigencia de no guardar silencio respecto asuntos relacionados con la relación contractual que se procura, debe reconocer cierta libertad de acción propia de los intereses que se contraponen. Por tal razón, la doctrina reconoce “que el ámbito de las tratativas es al mismo tiempo campo de colaboración y de competición. Que la primera es garantía de orden y la segunda alimenta aspectos vitales del sistema. De ahí que no viole el deber de ‘aviso’el contratante que sabiendo que la mercadería a adquirir va a aumentar de precio a la brevedad, no lo comunique a la contraparte en las tratativas”. (Énfasis nuestro.) Mosset Iturraspe, op. cit., pág. 206.
La disyuntiva entonces es determinar cuál de los múltiples elementos que influyen sobre el contrato se configura en un criterio de la solidaridad que obliga a su divulgación y cuál o cuáles se constituyen como elementos de la competencia, donde tal deber es inexistente. Creemos que, esencialmente, donde ubique cada criterio dependerá de las circunstancias particulares del negocio, de la naturaleza misma del contrato que se celebra y de las personas que contratan, entre otros criterios. En última instancia, corresponderá al juez evaluarlos y sopesarlos. En ese proceso, éste deberá auscultar una multiplicidad de circunstancias, entre las que se destaca “en qu[é] medida pudo el contratante descubrir por sí mismo los aspectos sobre los que no se le dio aviso, empleando el debido cuidado y atención”. (Énfasis nuestro.) Mosset Iturraspe, op. cit., pág. 207.
B. Las personas de buena fe no exigen el estricto cumplimiento de todas sus acreencias. De ahí que el Artículo *355 1210 del Código Civil, 31 L.P.R.A. sec. 3375, faculte a los tribunales para modificar un contrato válido. López de Victoria v. Rodríguez, 113 D.P.R. 265 (1982); Util. Cons. Servs. v. Mun. de San Juan, 115 D.P.R. 88 (1984); Levy v. Aut. Edif. Públicos, 135 D.P.R. 382 (1994).(11)
Nuestra Sentencia en el caso Util. Cons. Servs. v. Mun. de San Juan, supra, ilustra la función moderadora que responde directamente el principio de lealtad.(12) Allí se revocó una sentencia que declaraba “ha lugar” cierta demanda en cobro de dinero y daños contra el Municipio de San Juan. Caracterizamos los hechos pertinentes del modo siguiente:
Es de alto relieve la desproporción exorbitante entre las prestaciones de las partes contratantes, que conduce al derrumbe del contrato por aniquilamiento del equilibrio de esas mutuas prestaciones. Por una labor simple y esporádica que en ocasiones se reducá a limpiar la ventana de un contador olvidado y descubrir que el ratio (coeficiente) de tarifa era de 700 y no de 7,000 como se venía facturando; por el empleo de tiempo mínimo y horas no especificadas, la recurrida invoca el contrato (1) para justificar su acreencia sobre fondos públicos de $2,749,044.10 generados en su mayor parte durante los tres aos siguientes a su intervención. (Énfasis suprimido.) Util. Cons. Servs. v. Mun. de San Juan, supra, pág. 89.
Luego indicamos que “[l]a arraigada tradición de la autonomía de la voluntad (pacta sunt servanda), eje de la seguridad jurídica, permite frenar su predominio absoluto cuando la excesiva onerosidad alcance dimensiones de mala fe. Util. Cons. Servs. v. Mun. de San Juan, supra, págs. 89-90. Enfatizamos, sin embargo, que se debe utilizar dicha facultad con gran cautela y notoria justificación. Uno de los factores a considerarse es si era previsible la excesiva onerosidad. íd., págs. 89-91.
*356 III
Los demandantes recurridos sostienen que procede la “cancelación” o modificación de un arrendamiento debido a la mala fe de su arrendataria, EMB. Ofrecen dos razones: (1) EMB no divulgó sus contratos de subarrendamiento durante las negociaciones de 1994, y (2) los beneficios económicos que deriva EMB de los referidos contratos son muy superiores al canon arrendaticio.(13) Dichas alegaciones no justifican los remedios solicitados, dadas las circunstancias de este caso. Veamos.
A. En su primer planteamiento, los recurridos sostienen que EMB incurrió en mala fe al ocultar los subarriendos cuando se negociaron la ratificación y las enmiendas al arrendamiento. Hacen el planteamiento a pesar de los siguientes hechos relacionados con la escritura de 1994. Primero, al menos uno de los arrendadores otorgantes era un abogado, él estuvo a cargo de las negociaciones y ninguno de los arrendadores preguntó a EMB sobre el uso del terreno. Segundo, dicha circunstancia era verificable, al menos parcialmente, con una inspección de la fincad.(14) Ter *357 cero, se trata aquí de una transacción comercial; es decir, el propósito de ambas partes era primordialmente lucrativo.(15)
Así, el argumento de los recurridos se reduce a que la información debió divulgarse debido a su importancia. Esta responde exclusivamente al plazo del arrendamiento y a que su canon es muy inferior al beneficio derivado de los subarrendamientos. Los recurridos no sostienen que la pérdida de ingresos les haya causado serias dificultades económicas o que terceros se hayan afectado adversamente, etc. Se trata, pues, de un planteamiento esencialmente comercial.
Creemos que la mera desproporción entre ciertas prestaciones futuras es insuficiente para producir un deber de informar los hechos pertinentes durante las negociaciones, más allá del deber que pueda existir al palio de otras nor-mas obligacionales. Valga enfatizar que esto aplica sólo en situaciones como la presente, es decir, en ausencia de otras consideraciones favorables al deber de informar. Recuérdese que estamos ante un contrato comercial, pactado sin las gestiones que pudieron revelar la información omitida y cuyo negociante (por la parte perjudicada) era un profesional del Derecho.
En fin, no hubo una omisión capaz de justificar la anulación o revisión del contrato ante nos.
B. Los recurridos sostienen que se debe moderar la ex-cesiva onerosidad del canon arrendaticio, cuya mera exigencia constituye un acto de mala fe, dado el monto de los subarrendamientos.
Son varias las consideraciones relevantes al determinar qué constituye mala fe respecto a una prestación desorbitada. Entre ellas figura si las partes contemplaron o de *358 bieron contemplar el desbalance de las prestaciones.(16) Valga recalcar entonces que al menos uno de los arrendadores era abogado cuando se otorg la escritura de 1994 y estuvo a cargo de las negociaciones; que los arrendadores no indagaron con EMB sobre el uso del terreno durante las negociaciones, y que era posible verificar dicho uso, al me-nos parcialmente. Estas circunstancias dificultan, por no decir imposibilitan, en este caso la modificación judicial del contrato.(17) Las omisiones de los arrendadores no pueden convertir las acciones de los arrendatarios en unas acciones de mala fe.(18)
IV
En virtud de lo antes expresado, entendemos que procedía, como cuestión de derecho, dictar sentencia mediante la *359 cual se revoque la Resolución recurrida y, en su consecuencia, desestimar la demanda instada.

 Específicamente, Rita Ortiz Brunet, Eliza Ortiz Brunet, Carlos Ortiz Brunet, Jorge Antonio Ortiz Brunet y Antonio Ortiz Brunet.

 Aquí nos referimos a las contestaciones que hicieron Rita Ortiz Brunet, Carlos Ortiz Brunet, María M. San Miguel King, María Isabel San Miguel King, María del Mar Ortiz San Miguel, Jorge Ortiz San Miguel, Patricia Ortiz San Miguel y María Isabel Ortiz San Miguel a un interrogatorio de El Mundo Broadcasting Corporation (EMB).

 Comparecieron en la Demanda —y comparecen ante nosotros— Carlos Ortiz Brunet, Rita Ortiz Brunet, Eliza Ortiz Brunet, María del Mar Ortiz San Miguel, Jorge Antonio Ortiz San Miguel, Patricia Ortiz San Miguel y Maria Isabel Ortiz San Miguel.

 Los autos sugieren que existe un gran número de subarrendamientos en la finca. Por ejemplo, el informe pericial de los demandantes de octubre de 2004 indica la presencia de tres torres y 119 antenas, a las cuales corresponden setenta permisos activos hallados en los archivos de la Comisión Federal de Comunicaciones. Apéndice de la Petición de certiorari (Apéndice), pág. 275.

 El tribunal formuló dicha interrogante al concluir que no existía controversia entre las partes sobre la validez del arrendamiento, la ausencia de cláusula alguna que prohibiera el subarrendamiento ni el cumplimiento de EMB con los términos pactados y las disposiciones del Código Civil sobre el subarrendamiento.

 La peticionaria señaló los errores siguientes:
“Erró el Tribunal de Apelaciones al revocar la sentencia dictada por el Tribunal de Instancia por alegadamente existir controversias de hechos y de derecho.
“Erró el Tribunal de Apelaciones al determinar que el Tribunal de Instancia había abusado de su discreción [sic] al limitar el descubrimiento de prueba.” Petición de certiorari, pág. 7.

 Los trámites aludidos incluyen una Moción Informativa en Tomo a Cambio de Nombre de la Peticionaria El Mundo Broadcasting Corporation. Nos informa el letrado suscribiente los hechos siguientes: la representación legal de la peticionaria fue contratada por la Fundación Ángel Ramos, Inc. (Fundación); el 1 de agosto de 2003, la Fundación vendió a HBC Puerto Rico, Inc. (HBC) todas las acciones de EMB; dichas entidades se fusionaron, sobreviviendo HBC; en la referida compraventa de acciones, la Fundación se comprometió a representar a HBC en todo litigio surgido antes de la compraventa; HBC ha cambiado su nombre a Univisión Radio Puerto Rico, Inc. Dado que estas circunstancias no afectan la adjudicación del recurso ante nos, continuaremos refiriéndonos a la peticionaria como EMB.

 Procede una aclaración con respecto al alcance de nuestro análisis. El principio de la buena fe se ha invocado para fundamentar varias figuras obligacionales arraigadas en nuestra tradición civilista, como la de rebus sic stantibus, la de los actos propios y la del abuso del derecho. Véase M.J. Godreau Robles, Lealtad y Buena Fe Contractual, LVIII (Núm. 3) Rev. Jur. U.P.R. 367 (1989). Los recurridos no han invocado tales doctrinas ni han alegado los hechos que las harían pertinentes. Su reclamo se ampara en una aplicación directa del principio de la buena fe al proceso de negociación y a las prestaciones.

 Véase, en general, Godreau Robles, supra. Con respecto a las relaciones precontractuales, véanse: Colón v. Glamourous Nails, 167 D.P.R. 33 (2006); RBR Const., S.E. v. A.C., 149 D.P.R. 836 (1999); Torres v. Gracia, 119 D.P.R. 698 (1987); Prods. Tommy Muñiz v. COPAN, 113 D.P.R. 517 (1982). Véase, con respecto a la interpretación de los contratos: Municipio Mayagüez v. Lebrón, 167 D.P.R. 713 (2006); Negrón Rivera y Bonilla, Ex parte, 120 D.P.R. 61, 75 (1987); Ramírez, Segal & Látimer v. Rojo Rigual, 123 D.P.R. 161, 174-175 (1989). Sobre el cumplimiento, véanse: Arthur Young & Co. v. Vega III, 136 D.P.R. 157, 170-171 (1994); Ramírez v. Club Cala de Palmas, 123 D.P.R. 339 (1989). Con respecto a la modificación del contrato, véanse: López de Victoria v. Rodríguez, 113 D.P.R. 265 (1982), citado con aprobación en Marcial v. Tomé, 144 D.P.R. 522, 536 (1997), y en Méndez v. Morales, 142 D.P.R. 26, 35 (1996); Util. Cons. Seros, v. Mun. de San Juan, 115 D.P.R. 88 (1984), citado con aprobación en Levy v. Aut. Edif. Públicos, 135 D.P.R. 382, 395 (1994).

 No está claro, sin embargo, que la condición no pudiera advertirse totalmente. Indicamos en nuestra opinión: “Del 4 al 7 de noviembre se llevó a cabo la primera inspección [de la finca del demandante] por autoridades federales y locales encontrándose una cabeza contagiada. Esta tenía una pantalla de identificación indicativa de que provenía de la finca del demandado y que en una inspección anterior había sido encontrada sana. Pudieron identificar además otras cinco (5) reses provenientes de la finca del demandado a través de sus respectivas pantallas de identificación.” Márquez v. Torres Campos, 111 D.P.R. 854, 858-859 (1982).

 El concepto “orden público” del Artículo 1207 del Código Civil, 31 L.P.R.A. see. 3372, también autoriza la modificación de los contratos cuando resultan leoninos. De Jesús González v. A.C., 148 D.P.R. 255 (1999). Esta figura no se ha invocado en el caso de autos.

 Cabe reiterar que la sentencia aludida fue citada con aprobación en Levy v. Aut. Edif. Públicos, supra, pág. 395.

 Los recurridos añaden que EMB cumplió con sus obligaciones contractuales con mala fe al no revelar los subarriendos. Demanda, Apéndice, pág. 31; Alegato de los recurridos, pág. 9. Es decir, nos invitan a resolver que el principio de lealtad impone sobre el arrendatario un deber de revelar motu proprio los subarriendos pactados, al menos cuando el contrato es de larga duración y su canon es muy inferior al beneficio derivado de los subarrendamientos. Esta norma carece de fundamento jurídico.

 Los recurridos arguyen que el uso podía descubrirse sólo con la intervención de un perito. Rechazamos este planteamiento por dos razones. Primero, una inspección medianamente cuidadosa de la finca hubiera revelado indicios de un uso más intensivo. De hecho, los recurridos alegaron ante el foro primario:
“... En marzo y abril del 2004, el Sr. Carlos Ortiz Brunet tomó varias fotografías del terreno arrendado. Estas fotos demuestran varios discos o antenas parabólicas (idishes) en el terreno. Estas suman más de media dozena [sic].” (Escolios omitidos.) Moción sobre contestación a descubrimiento de prueba; solicitud para que se niegue sentencia sumaria de la parte demandada; se dicte sentencia sumaria a favor de los demandantes y expli[ca]ción sobre tardanza en contestar moción de El Mundo Broadcasting Corporation, Apéndice, pág. 198.
Segundo, no se ha explicado por qué era imposible o inapropiado contratar a un perito antes de otorgar la escritura de 1994.

 Estas consideraciones disponen de la controversia sobre si hubo un vicio del consentimiento debido al error, asunto que no ha figurado centralmente en este litigio, pero que las partes discuten en sus alegatos.

 También observamos que no se ha establecido una desproporcin entre las prestaciones del contrato. Los recurridos enfatizan el beneficio que recibe EMB como subarrendadora. Sin embargo, falta la evidencia tendiente a demostrar que dicho beneficio no responde a las gestiones o caractersticas de EMB. Ciertamente, al sostener que EMB debió reveler los subarriendos durante las negociaciones de 1994, los recurridos señalan que “la razón de ser de estos subarriendos es claramente el terreno y la facilidad de retrasmitir señales de radio, televisión y microndas [síc]”. Alegato de los recurridos, pág. 10. Pero la cuestión medular no se refiere a si el terreno es apto para la retransmisión, sino a factores tales como su aptitud relativa a otros terrenos y la capacidad de los recurridos para desarrollar el mismo negocio que ha desarrollado EMB.

 El resultado al que llegamos hace innecesario examinar el segundo señalamiento de error que hace la peticionaria sobre la suficiencia del descubrimiento de prueba.

 Para culminar, entendemos necesario los siguientes comentarios para atender algunas de las expresiones de la opinión de conformidad, ya que entendemos que estas expresiones no logran apurar la posición expresada en nuestra opinión disidente. En ésta se sostiene únicamente que cuando una parte alegue disparidad en unas prestaciones —que es lo que aquí se plantea—• no es necesario saber cuál es la disparidad si la parte que lo alega no demostró su diligencia. Ello, matizado por y visto en el contexto de, un negocio como el de autos donde, la parte “afectada” que gestionó el contrato fue un reconocido abogado, las características de la propiedad eran de fácil corroboración, no se hizo gestión alguna para inquirir sobre el predio y su posible subarrendamiento y, claro está, nada en el contrato prohibía el subarrendamiento.
Por otra parte, se debe aclarar también que dado la etapa procesal en que se encuentra este caso, no se está en posición de determinar, ni por lo tanto concluir fehacientemente, que estamos ante una gestión de negocios deshonesta.