ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL X**

| | | |
|---|---|---|
| **MARÍA ELENA TORRES ALVARADO** DEMANDANTE(S)-PETICIONARIA(S) <br><br> V. <br><br> **ARTURO JOSÉ ALMODÓVAR FARÍA** DEMANDADA(S)-RECURRIDA(S) | **KLCE202400313** | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de **PONCE** <br><br> Caso Núm. **J DI2018-0625** (405) <br><br> Sobre: Divorcio (Alimentos) |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 7 de mayo de 2024.

Comparece ante este Tribunal de Apelaciones, la señora **MARÍA ELENA TORRES ALVARADO** (señora **TORRES ALVARADO**) mediante *Certiorari Urgente* incoado el 14 de marzo de 2024. En su escrito, nos solicita que revisemos la *Resolución* emitida el 9 de febrero de 2024 por el Tribunal de Primera Instancia (TPI), Sala Superior de Ponce.[1] Mediante la referida decisión, se declaró no ha lugar una *Solicitud Urgente de Revisión de Pensión Alimentaria* y *Solicitud Urgente de Señalamiento de Vista* presentada el 19 de diciembre de 2023 por la señora **TORRES ALVARADO**.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

---

[1] Dicho dictamen judicial fue notificado y archivado en autos el 13 de febrero de 2024. Véase Apéndice del *Certiorari Urgente*, págs. 17- 18.

Número Identificador: SEN2024_____

**- I -**

El 31 de agosto de 2018, se entabló *Demanda* sobre divorcio por la causal de ruptura irreparable. Posteriormente, el 7 de diciembre de 2018, se dictó *Sentencia* en la cual, entre otras cosas, se dispuso sobre la pensión alimentaria, custodia y relaciones filiales.

Luego de varios incidentes procesales, el 12 de octubre de 2023, los señores **TORRES ALVARADO** y **ARTURO J. ALMODÓVAR FARIA** (señor **ALMODÓVAR FARIA**), por derecho propio, suscribieron una *Estipulación* y se presentó ante la consideración del foro *a quo*.[2] En la misma, acordaron que la señora **TORRES ALVARADO** pagaría la suma de $650.00 bisemanales a partir de 15 de octubre de 2023 mediante depósito en la Administración para el Sustento de Menores (ASUME) para beneficio de sus dos (2) hijos menores de edad.[3] Así mismo, debía satisfacer el 64% de los gastos médicos, no cubiertos por el plan médico; gastos extraordinarios; y gastos escolares sin incluir la mensualidad del colegio. Se dispuso, además, una deuda retroactiva por la cuantía de $6,717.00 a ser satisfecha mediante abonos de $2,239.00 con fecha de vencimiento: el 15 de noviembre de 2023 y 15 de diciembre de 2023.

La señora **TORRES ALVARADO** perdió su empleo con la *Ponce School of Medicine & Health Servicies*. Razón por la cual, procedió a solicitar empleo con el Gobierno Federal y obtuvo varios contratos en Puerto Rico.[4] Finalizado su último contrato en Puerto Rico, la señora **TORRES ALVARADO** procuró otros trabajos relacionados en varios estados de Estados Unidos. Los contratos de empleo duraron hasta el 13 de diciembre de 2023.

Ante su desempleo, el 19 de diciembre de 2023, la señora **TORRES ALVARADO** presentó su *Solicitud Urgente de Revisión de Pensión Alimentaria y Solicitud Urgente de Señalamiento de Vista*.[5] El 10 de enero de 2024, se decretó *Orden* en la cual se le concedió hasta en o antes de 19 de enero

---

[2] Véase Apéndice del *Certiorari Urgente*, págs. 1- 2.
[3] La pensión alimentaria tenía efectividad desde el 3 de abril de 2023.
[4] Dichos contratos se renovaban a la entera discreción del patrono, Gobierno Federal.
[5] Véase Apéndice del *Certiorari Urgente*, págs. 3- 10.

de 2024 para expresar su posición al señor **ALMODÓVAR FARIA**. El 17 de enero de 2024, el señor **ALMODÓVAR FARIA** presentó *Moción en Solicitud de Orden* alegando no haber recibido notificación alguna; requiriendo que se ordenara la notificación adecuada; y se concediera un término de diez (10) días para replicar. El 22 de enero de 2024, se expidió *Orden* en la cual se impuso la notificación dentro de veinticuatro (24) horas y concediendo hasta el 2 de febrero de 2024 para expresarse. El 1 de febrero de 2024, el señor **ALMODÓVAR FARIA** presentó *Moción en Cumplimiento de Orden Oposición a "Solicitud Urgente de Revisión de Pensión Alimentaria" y Solicitud de Desacato*. Así las cosas, el 9 de febrero de 2024, se dictaminó la *Resolución* recurrida. Asimismo, se pronunció *Orden* pautando audiencia sobre desacato para el 6 de marzo de 2024 e imponiendo un abono de $2,500.00.

Insatisfecha con dicha determinación judicial, el 14 de marzo de 2024, la señora **TORRES ALVARADO** recurrió ante este foro intermedio señalando el(los) siguiente(s) error(es):

> Erró el Tribunal de Primera Instancia al no considerar la reducción en salario de la persona no custodia, *cuando la misma fue un despido y peor aún, una finalización de un contrato a término*.

> Erró el Tribunal de Primera Instancia al no citar a vista y resolver el asunto por meras argumentaciones e interpretaciones mendaces del demandado, violentando el debido proceso de ley y el derecho a la confrontación, ambos pilares de nuestro Derecho Constitucional.

El 15 de marzo de 2024, intimamos *Resolución* concediendo, entre otras cosas, término de diez (10) días al señor **ALMODÓVAR FARIA** para exponer su posición sobre el recurso.[6] Al día de hoy, el señor **ALMODÓVAR FARIA no** ha presentado contención alguna.

Evaluado concienzudamente el expediente del caso, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

---

[6] Dicha determinación judicial fue notificada y archivada en autos el 18 de marzo de 2024.

- II –

- A –

El auto de *certiorari* es un vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial.[7] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[8]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[9] Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[10]

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[11] La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, injunctions de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[12] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

> (1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
> (2) en asuntos relacionados a privilegios evidenciarios;
> (3) en casos de anotaciones de rebeldía;
> (4) en casos de relaciones de familia;
> (5) en casos revestidos de interés público; o
> (6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia. [13]

---

[7] *Rivera Gómez v. Arcos Dorados Puerto Rico Inc.*, 2023 TSPR 65; 212 DPR ___ (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).
[8] *Íd.*
[9] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).
[10] *Íd.*
[11] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez*, supra.
[12] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).
[13] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones.[14]

Por otro lado, el examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[15] Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema;
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;
(D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[16]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[17] En otras palabras, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[18] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*. La delimitación que

---

[14] *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG, supra*.
[15] *McNeil Healthcare v. Mun. Las Piedras I*, supra, pág. 404; *800 Ponce de León v. AIG, supra*.
[16] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580 (2011).
[17] *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005).
[18] *Mun. Caguas v. JRO Construction, Inc., supra*, pág. 712.

imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[19]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[20] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[21]

## - B –

El deber de alimentar a los hijos es inherente a la paternidad y maternidad independientemente de las fuentes de las cuales emana la obligación de alimentar.[22] Su fundamento ético descansa en el derecho natural, en los lazos indisolubles de amor, solidaridad humana y de profunda responsabilidad de las personas por los hijos que traen al mundo.[23] La base estatutaria de esta obligación la encontramos en la Constitución de Puerto Rico, pues emana del propio derecho a la vida consagrado en la Carta de Derechos.[24]

La fuente estatutaria de la obligación de los progenitores de proveer alimentos a sus hijos menores la encontramos en el Artículo 590 del Código Civil de Puerto Rico de 2020 el cual expresa:

> Los progenitores tienen sobre el hijo sujeto a su patria potestad los siguientes deberes y facultades:
> (a) Velar por él y tenerlo en su compañía;
> (b) Alimentarlo y proveerle lo necesario para su desarrollo y formación integral;[25] [...]

---

[19] *Scotiabank v. ZAF Corp. et al.,* 202 DPR 478, 486– 487 (2019); *Mun. Caguas v. JRO Construction Inc., supra.*

[20] *García v. Asociación,* 165 DPR 311, 322 (2005).

[21] *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).

[22] *De León Ramos v. Navarro Acevedo,* 195 DPR 157, 169 (2016) *Santiago, Maisonet v. Maisonet Correa,* 187 DPR 550, 560-561 (2012).

[23] Sarah Torres Peralta, *La Ley de Sustento de Menores y el Derecho Alimentario de Puerto Rico,* San Juan, Publicaciones STP, Inc., Edición 2006, Tomo I, pág. 1.11; *Umpierre Matos v. Juelle, Mejías,* 203 DPR 254, 266 (2019), citando a *Argüello v. Argüello,* 155 DPR 62, 69 (2001).

[24] *Díaz Rodríguez v. García Neris,* 208 DPR 706 (2022).

[25] Artículo 590 del Código Civil de 2020, Ley Núm. 55-2020 (31 LPRA § 7531).

Con este principio de referente, el Código Civil de Puerto Rico de 2020 instituye los lineamientos más generales de la obligación de alimentar a los hijos e hijas menores de edad, mientras la *Ley Orgánica de la Administración para el Sustento de Menores* (*Ley de ASUME*) y las *Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias en Puerto Rico* (*Guías Mandatorias 9535*) proveen los parámetros más específicos.[26]

Por *alimentos* se entiende todo lo que es indispensable para el sustento del(de la) menor, su vivienda; vestimenta; recreación; asistencia médica; educación, atenciones de previsión acomodadas a los usos y circunstancias de su entorno familiar y social y los gastos extraordinarios para la atención de sus condiciones personales especiales.[27] Por tratarse de un derecho que surge de la filiación, ambos progenitores están obligados a proveer alimentos.[28]

El criterio rector al momento de fijar la cuantía de una *pensión alimentaria* es que esta sea proporcionada entre los recursos económicos del alimentante y las necesidades del alimentista.[29] Este precepto, conocido como *principio de proporcionalidad*, exige "que se establezca un balance entre los intereses del menor y la capacidad económica de aquellos responsables de costear esas necesidades".[30] El *principio de proporcionalidad* se integra tanto en la *Ley de ASUME* como en los procedimientos descritos en las *Guías Mandatorias 9535*.[31]

---

[26] *Ley Orgánica de la Administración para el Sustento de Menores*, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 LPRA § 501 *et al.*; *Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias en Puerto Rico*; Reglamento Núm. 9535, Administración para el Sustento de Menores, 15 de febrero de 2024.

[27] Artículo 653 del Código Civil de 2020, 31 LPRA § 7531.

[28] Artículo 558 del Código Civil de 2020, 31 LPRA § 7104.

[29] El Artículo 146 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 565, disponía que "[l]a cuantía de los alimentos será proporcionada a los recursos del que los da y a las necesidades del que los recibe [...]". El Código Civil de 2020 mantiene un lenguaje similar en su Artículo 666 al expresar que: "[l]a cuantía de los alimentos se reduce o aumenta proporcionalmente según aumenten o disminuyen las necesidades del alimentista y los recursos del obligado.". 31 LPRA § 7567. Respecto a la cuantía de los alimentos de los hijos menores de edad, el Código Civil vigente decreta que "se fija siguiendo los criterios dispuestos en la ley especial complementaria". Véase, además, *Pesquera Fuentes v. Colón Molina*, 202 DPR 93, 108 (2019); *Llorens Becerra v. Mora Monteserín*, 178 DPR 1003, 1016 (2010).

[30] *Pesquera Fuentes v. Colón Molina, supra*; *De León Ramos v. Navarro Acevedo, supra,* pág. 171.

[31] *De León Ramos v. Navarro Acevedo, supra*, pág. 172.

De otra parte, la *Ley de ASUME* ordenó la adopción de las *Guías Mandatorias 9535* para uniformar y facilitar la determinación de *pensiones alimentarias* mediante el empleo de criterios numéricos y descriptivos, siempre en función de los ingresos de los progenitores.[32] En pos de este objetivo, el Artículo 19 la *Ley de ASUME*, hace obligatorio el empleo de los procedimientos descritos en las *Guías Mandatorias 9535* para el cómputo de las *pensiones alimentarias*.[33] Dicho artículo lee como sigue:

> En todo caso en que se solicite la fijación o modificación, o que se logre un acuerdo o estipulación de una pensión alimentaria, **será mandatorio** que el Tribunal o el Administrador, según sea el caso, determine el monto de la misma utilizando para ello las guías adoptadas a tenor con lo dispuesto en este Artículo.[34]

En lo pertinente al caso de marras, en los casos en los cuales el(la) alimentante alega que no tiene ingresos suficientes o gana menos que antes, el tribunal debe hacer todo lo posible para verificar que lo alegado por el(la) alimentante no sea un intento de evadir su responsabilidad alimentaria.[35]

Más aún, en los casos en que el(la) alimentante pueda demostrar que sus ingresos han disminuído, los tribunales de instancia, al tomar en cuenta la prueba ante sí, tienen la obligación de distinguir entre las situaciones en que la reducción de ingresos ha ocurrido por razones legítimas y los casos en los que la reducción ha sido deliberada o se debe a la falta de diligencia o a la dejadez del(de la) alimentante. Lo esencial es que el tribunal verifique que la reducción en los ingresos del(de la) alimentante no sea un artificio para éste incumplir con su obligación de alimentar a sus hijos adecuadamente.[36]

Por otro lado, una vez establecida la *pensión alimentaria*, nuestro más Alto Foro ha expresado que, la alteración del convenio o estipulación sobre *pensión alimentaria* procederá solamente cuando exista un cambio sustancial en las circunstancias que dieron lugar u originaron el dictamen judicial.[37]

---

[32] *Santiago Texidor v. Maisonet Correa*, 187 DPR 550, 569 (2012); *Torres Rodríguez v. Carrasquillo Nieves*, 177 DPR 728, 762 (2009).
[33] 8 LPRA § 518.
[34] *Íd.*
[35] *Argüello López v. Argüello García, supra*, pág. 74.
[36] *Argüello López v. Argüello García, supra*, pág. 74
[37] *Ex parte Negrón Rivera y Bonilla*, 120 DPR 61,77 (1987).

Nuestro más Alto Foro expresó que una modificación de la estipulación relativa a la *pensión alimentaria* de hijos menores procede sólo, si a la luz de la nueva prueba presentada por el peticionario o la peticionaria, se demuestra que éste ha sufrido cambios que afecten su capacidad para proveer alimentos. En síntesis, solo se modificará cuando se demuestre al tribunal que verdaderamente ha ocurrido un cambio sustancial que afecte la capacidad del(de la) alimentante para proveer los alimentos.[38]

En resumen, los casos de *pensión alimentaria* se fijarán acorde a los preceptos dispuestos por el Código Civil de Puerto Rico, la *Ley de ASUME* y las *Guías Mandatorias 9535*, y tomando en consideración la condición económica y el estilo de vida del(de la) alimentante, atado a las necesidades del(de la) alimentista, integrando en estas el estilo de vida al cual estaba acostumbrado.[39]

- III -

En esencia, como primer error, la señora **TORRES ALVARADO** sostiene que, el foro *a quo* incidió al no considerar la reducción de su salario, cuando la misma fue debido a un despido. Como segundo error, argumentó que erró el tribunal al no citar a vista y resolver el asunto por meras argumentaciones e interpretaciones del señor **ALMODÓVAR FARIA**, violentado el debido proceso de ley. Por encontrarse intrínsecamente relacionados, discutiremos los señalamientos de error de forma conjunta.

La señora **TORRES ALVARADO** solicitó se ordenara un señalamiento de vista, de manera urgente, para que se estableciera una *pensión alimentaria* de acuerdo a su nueva realidad económica y laboral. Ello fundamentado en haber sido despedida de su empleo en el gobierno federal. Así las cosas, el señor **ALMODÓVAR FARIA** presentó una moción en oposición alegando que, la causa del despido de la señora **TORRES ALVARADO**, fue "autoinfligida", culposa y negligente, pues no cumplió con los requisitos exigidos para la continuidad

---

[38] *Valencia, Ex parte*, 116 D.P.R. 909, 915 (1986)
[39] *Díaz Rodríguez v. García Neris, supra; Santiago, Maisonet v. Maisonet Correa, supra*, pág. 566.

de su empleo. Finalmente, la primera instancia judicial emitió la *Resolución* impugnada.

En los casos en que un(a) alimentante alegue que sufrió una disminución de sus ingresos, dado a que, tuvo una pérdida de empleo, nuestro más Alto Foro ha expresado que los tribunales de instancia tienen la responsabilidad ineludible de escudriñar la prueba que tienen ante sí, a fin de determinar la verdadera situación económica del(de la) alimentante. Además, ha expresado, que los tribunales tienen la obligación de distinguir entre las situaciones en que la reducción de ingresos ha ocurrido por razones legítimas y diferenciar de los casos en los cuales la reducción ha sido deliberada o se debe a la falta de diligencia o a la dejadez del(de la) alimentante.

La señora **TORRES ALVARADO** presentó su solicitud de revisión de la *pensión alimentaria* acompañada de una misiva de la U.S. Small Business Administration en la cual se expresa:

> "The continuation of your employment would not promote the efficiency of the service due to the reason as stated below: Failure to meet suitability requirement".

En este caso, no se auscultó las razones por las cuales la señora **TORRES ALVARADO** fue despedida. Esto es, el Tribunal de Primera Instancia no celebro una audiencia para indagar cuáles fueron las causas del despido. Es decir, no escudriñó cual es el significado de "failure to meet suitability requirement" (incumplimiento del requisito de idoneidad), según el antiguo patrono de la señora **TORRES ALVARADO**. Ni constató las razones para la reducción en los ingresos de la señora **TORRES ALVARADO** o si fue un artificio para incumplir con su obligación de alimentar. Somos del criterio que el foro de instancia incidió al emitir *Resolución*, sin previamente celebrar una audiencia y auscultar la totalidad de las circunstancias por las cuales la señora **TORRES ALVARADO** incumplió con el requisito de idoneidad, y fue despedida. Razonamos que este error señalado por la señora **TORRES ALVARADO** fue cometido.

Colegimos que le corresponde al foro *a quo* celebrar una audiencia para dirimir si la señora TORRES ALVARADO, fue despedida por razones legítimas o si su despido se debió a su falta de diligencia y/o dejadez para eludir su responsabilidad. Lo anterior, con el fin de asegurar el derecho del debido proceso de ley del(de la) alimentante. Una vez celebrada la audiencia, el tribunal deberá proceder de conformidad a derecho.

- IV -

Por los fundamentos antes expuestos, ***expedimos*** el auto de *certiorari;* ***revocamos*** la *Resolución* determinada el 9 de febrero de 2024; y ***devolvemos*** el caso al Tribunal de Primera Instancia para que proceda de forma compatible con nuestros pronunciamientos. Al amparo de la Regla 18 (B) de nuestro Reglamento, el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin que tenga que esperar por nuestro mandato.[40]

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[40] La Regla 18 sobre el *Efecto de la presentación del escrito de apelaciones en casos civiles* dispone: (A) **Suspensión** Una vez presentado el escrito de apelación, se suspenderán todos los procedimientos en el Tribunal de Primera Instancia respecto a la sentencia, o parte de la misma, de la cual se apela, o a las cuestiones comprendidas en ella, salvo orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones, **pero el Tribunal de Primera Instancia podrá proseguir el pleito en cuanto a cualquier cuestión no comprendida en la apelación**. (B) **Cuando no se suspenderá** No se suspenderán los procedimientos en el Tribunal de Primera Instancia cuando la sentencia dispusiere venta de bienes susceptibles de pérdida o deterioro. En ese caso el Tribunal de Primera Instancia podrá ordenar que dichos bienes sean vendidos y su importe depositado hasta tanto el tribunal de apelación dicte sentencia. **No se suspenderán los efectos de una decisión apelada, salvo una orden en contrario expedida por el Tribunal de Apelaciones, por iniciativa propia o a solicitud de parte, cuando ésta incluya cualesquiera de los remedios siguientes**: (1) una orden de *injunction*, de *mandamus* o de hacer o desistir; **(2) una orden de pago de alimentos; (3) una orden sobre custodia o relaciones filiales** (énfasis nuestro).